UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

In re: Dial Complete Marketing          Case No. 11-md-2263-SM
and Sales Practices Litigation          Opinion No. 2013 DNH 043


**O R D E R**


This consolidated, multi-district litigation is brought by consumers in Arkansas, California, Florida, Illinois, Louisiana, Missouri, New Hampshire, New York, Ohio, and Wisconsin, on behalf of themselves and similarly situated consumers in those states. Plaintiffs accuse defendant, The Dial Corporation ("Dial"), of falsely advertising the antibacterial properties of its "Dial Complete" branded soaps. They advance claims under their respective state consumer protection/unfair trade practices statutes, as well as statutory and common law causes of action for breach of warranty and unjust enrichment. Dial moves to dismiss all counts of plaintiffs' Consolidated Amended Complaint, saying none adequately pleads a viable claim. See Fed. R. Civ. P. 12(b)(6). Plaintiffs object.


For the reasons discussed, Dial's motion to dismiss is denied.

### Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove

the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."   Tambone, 597 F.3d at 442.


## Background

Accepting the allegations set forth in the Consolidated Amended Complaint as true, the relevant facts are as follows. Dial manufactures, markets, and sells a line of antibacterial hand-washing products under the name "Dial Complete."  The active ingredient in Dial Complete is a compound known as triclosan - a product originally patented as an herbicide and currently registered with the Environmental Protection Agency as a pesticide.  Because of its antibacterial properties, triclosan has been used in some soaps and other household products since the 1960's.


According to plaintiffs, Dial markets Dial Complete employing numerous misleading and deceptive claims, which include the following: that Dial Complete "kills 99.99% of germs;" that it kills 99.9% of illness-causing bacteria; that it is "doctor recommended;" that it "kills more germs than any other liquid hand soap;" and that it has been "shown to help reduce disease transmission by 50% compared to washing with a plain soap." Consolidated Amended Complaint (document no. 32) at paras. 47-51. Plaintiffs also take issue with Dial's claim that Dial Complete

delivers a "100 to 1,000 fold increase in germ-killing activity compared to washing with just plain soap and water." Id. at para. 60.

According to plaintiffs, Dial Complete has no greater efficacy than soaps that do not contain triclosan, and there is no clinical support for defendant's advertising and packaging claims concerning the product. They say Dial's "claims about Dial Complete's effectiveness and superiority are false, deceptive, unfair, and unconscionable because there is not sufficient, competent and/or reliable scientific evidence" to support such claims. Id. at para. 69. Plaintiffs assert that Dial's claims appear to be based upon a single, in-house study, conducted at the "Dial Center for Innovation." And, Dial's advertising and packaging materials fail to disclose the study's substantial limitations which, say plaintiffs, render the study incomplete, unreliable, and insufficient to support Dial's false and deceptive claims about its Dial Complete line of products.[1]

---

[1] According to plaintiffs, the study's alleged limitations include: (a) that only two types of bacteria were tested; (b) that the study failed to determine whether repeated use of Dial Complete led to the development of immunity to the product's antimicrobial properties; (c) that only seven to thirteen subjects participated in the study (which, plaintiffs suggest, renders the study scientifically unreliable); and (d) that the study did not compare Dial Complete with any other antibacterial soap. Id. at para. 74.

4

Plaintiffs also complain that Dial's advertising and packaging materials for Dial Complete fail to warn consumers that using products containing triclosan may lead to the emergence of bacteria that are resistant to triclosan and/or other antimicrobial agents.  Id. at 78.

In support of their claims, plaintiffs point to several scientific studies, including one published in 2004 in the American Journal of Infection Control.  The authors of that study concluded that "after testing the efficacy of fourteen different hand hygiene agents including a hand wash with 1% triclosan, washing with plain soap and water was more effective than triclosan after just one wash."  Consolidated Amended Complaint at para. 80.[2]

Plaintiffs also rely on several published studies that they say found little evidence to support the claim that "triclosan soap affords any benefit in the reduction of infectious symptoms, bacterial counts, or types of bacteria on the hands of individuals within the household setting in the developed world." Id. at para. 81.  In another study, published in Clinical

_____

[2]     The packaging and labeling materials submitted by the parties disclose that triclosan is present in Dial Complete at a concentration of less than one-half of one percent.  See Consolidated Amended Complaint at 12.  See also Exhibit B to Defendant's Motion to Dismiss (document no. 36-4).

Infectious Diseases, plaintiffs say researchers reviewed 27
separate studies conducted over the past 30 years and determined
that "soaps containing added ingredients such as triclosan in
liquid soap and Triclocarbon in bar soap do not show a benefit
above and beyond soap that does not contain those ingredients in
the real world environment."  Consolidated Amended Complaint at
para. 83.

Additionally, plaintiffs allege that, in 2005, the U.S. Food
and Drug Administration ("FDA") concluded that antimicrobial
soaps do not reduce the risk of illness and infection in the
home.  And, more recently, in a 2010 "Consumer Update," the FDA
stated that "[a]t this time, FDA does not have evidence that
triclosan added to antibacterial soaps and body washes provides
extra health benefits over soap and water."  Id. at para. 87
(citation omitted).

In light of the foregoing, plaintiffs allege that Dial has
engaged in, and continues to engage in, the following course of
wrongful conduct:

    a.   Representing, both expressly and by
          implication, that Dial Complete's
          antibacterial properties and its health
          benefits are more substantial than they
          actually are;

6

    b.    Failing to disclose to consumers the
        reasonably foreseeable risks associated with
        using Dial Complete, as well as the existence
        (and nature) of material defects in the
        product; and

    c.    Falsely representing in advertising materials
        that Dial possesses clinical and/or
        scientific data to support its false claims
        about the efficacy of Dial Complete.

See id. at para. 94.


The Consolidated Amended Complaint advances four causes of action: violation of various state consumer protection laws (count one); breach of express warranty (count two); breach of implied warranty (count three); and unjust enrichment (count four).  Plaintiffs seek class certification, see Fed. R. Civ. P. 23, and, once certified, they seek monetary damages and an award of costs and attorney's fees.  Although they originally sought injunctive relief as well (count five), plaintiffs have since filed an assented-to motion to withdraw that count, without prejudice.  See Document no. 75.


Parenthetically, the court notes that this litigation is substantially similar to the consolidated multi-district litigation currently pending in this court against Colgate-Palmolive.  See In re Colgate-Palmolive Softsoap Antibacterial Handsoap Marketing and Sales Practices Litigation, Case no. 12-

MD-2320-PB.  And, not surprisingly, many of the issues raised in this case have been raised and/or resolved in the Colgate-Palmolive case as well.

## Discussion

Pursuant to Fed. R. Civ. P. 12(b)(6), Dial moves to dismiss the Consolidated Amended Complaint, asserting that plaintiffs have failed to plead their claims with sufficient specificity under Rules 8 and 9(b); that, under the primary jurisdiction doctrine, the court should refer this case to the FDA to allow that agency to apply its expertise to important scientific and regulatory issues raised by plaintiffs' claims; and that plaintiffs have failed, as a matter of law, to state viable claims under state law.

I.   Pleading Claims with Sufficient Specificity.

In support of its motion to dismiss, Dial first argues that because plaintiffs' claims either affirmatively allege deception and fraud, or because they incorporate by reference the fraud-based allegations of the complaint, the "sounds in fraud" doctrine requires those claims be pled with added specificity. And, says Dial, plaintiffs have failed to do so.

To satisfy the heightened pleading requirements imposed by Rule 9 of the Federal Rules of Civil Procedure, plaintiffs must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That, in turn, requires them to "specify the who, what, where, and when of the allegedly false or fraudulent representation." <u>Alternative Sys. Concepts, Inc. v. Synopsys, Inc.</u>, 374 F.3d 23, 29 (1st Cir. 2004). Finally, the complaint must also set forth specific facts that give rise to a reasonable inference that the defendant knew a particular statement was materially false or misleading. <u>See</u> <u>N. Am. Catholic Edu. Programming Foundation, Inc. v. Cardinale</u>, 567 F.3d 8, 13 (1st Cir. 2009). Because the Consolidate Amended Complaint meets those heightened pleading requirements, the court need not resolve whether the "sounds in fraud" doctrine applies to this case; even assuming that doctrine does apply, plaintiffs have pled their claims with sufficient specificity under Rules 8 and 9(b).

According to Dial, plaintiffs' complaint falls short of the requirements imposed by Rules 8 and 9(b) because plaintiffs "do not allege the existence of a single study that refutes the claims made about Dial Complete that they challenge." Defendant's memorandum (document no. 36-1) at 5. While it is true that plaintiffs cite no studies that specifically tested the

antibacterial efficacy of Dial Complete, that absence is not
fatal.  Plaintiffs have alleged sufficient facts - including the
existence of various scientific studies, and the FDA's own
conclusion that it "does not have evidence that triclosan added
to antibacterial soaps and body washes provides extra health
benefits over soap and water" - to support their claims that, in
essence: (1) Dial Complete does not provide any additional
antibacterial benefits over plain soap and water; and (2) Dial
was aware of that fact when it published claims about Dial
Complete's superior antibacterial properties and health benefits.

   Dial responds by pointing out the unique - indeed patented -
formula of its Dial Complete products, suggesting that Dial
Complete is more effective at killing bacteria than the
triclosan-based products that were the subject of the studies
cited by plaintiffs.  That may, of course, be true.  But, at this
early stage of the litigation, plaintiffs need not disprove that
claim.  They need only plead sufficient facts to support their
assertion that Dial knowingly misrepresented the antibacterial
efficacy of its Dial Complete product line.  They have done so.[3]

----

[3]     Dial says it was granted a patent based upon its
discovery that an "antibacterial agent that is free in the
solution and not tied up in a surfactant is able to perform its
function of killing bacteria quickly."  Defendant's Memorandum at
3.  The existence of that patent, says Dial, establishes the
truth of its marketing claims about Dial Complete's superior
efficacy and warrants dismissal of plaintiffs' complaint.  It

II.  <u>Primary Jurisdiction</u>.

Next, Dial points out that the FDA has, for many years, been studying the safety, efficacy, testing, and labeling of products containing triclosan.  And, because Dial still apparently believes that "proposed regulations on these issues are imminent," it asserts that the court should invoke the doctrine of primary jurisdiction, "dismiss Plaintiffs' claims[,] and refer this case to the FDA for administrative determination."  Defendant's memorandum (document no. 36-1) at 15.

A.  <u>Legal Background</u>.

The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties."  <u>United States v. Western P. R. Co.</u>, 352 U.S. 59, 64 (1956).  It may be invoked when claims properly pending before a

_____

does not.  The patent simply teaches an apparently novel means by which to formulate an "antibacterial composition."  Moreover, the court notes that the patent states that, in preferred embodiments, the active antimicrobial agent "is present in an amount of at least 2%, and preferably at least 25%, of saturation, when measured at room temperature."  <u>See</u> Exhibit B to Defendant's Memorandum (document no. 36-3).  As noted above, the labeling materials provided by the parties show that triclosan is present in Dial Complete at a concentration of 0.46% - substantially below the concentration specified in the patent's preferred embodiment.  It is, then, unclear how the patent conclusively establishes the truth of Dial's marketing claims about Dial Complete.  If it does, Dial has failed to explain how.

court involve issues that fall within the special competence of an administrative agency, and the court would benefit from obtaining the agency's expertise on those matters. <u>See</u> <u>Pejepscot Indus. Park v. Maine Central R.R.</u>, 215 F.3d 195, 205 (1st Cir. 2000). In those circumstances, the court may, in its discretion, refer such issues to the agency in order to obtain its views.

But, as the Supreme Court has observed, "[n]o fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." <u>Western Pacific</u>, 352 U.S. at 64. Consequently, before invoking the doctrine, there are several factors a court should consider, including whether its ruling on a particular matter might disturb or disrupt the regulatory regime of the agency in question, and whether "the goal of national uniformity in the interpretation and application of a federal regulatory regime is furthered by permitting the agency that has primary jurisdiction over the matter in question to have a first look at the problem." <u>Am. Auto. Mfrs. Ass'n v. Mass. Dep't of Envtl. Prot.</u>, 163 F.3d 74, 81 (1st Cir. 1998). Additionally, the Court of Appeals for the First Circuit has instructed lower courts to consider:

> (1) whether the agency determination lies at the heart
> of the task assigned the agency by Congress; (2)
> whether agency expertise is required to unravel
> intricate, technical facts; and (3) whether, though
> perhaps not determinative, the agency determination
> would materially aid the court.

Massachusetts v. Blackstone Valley Elec. Co., 67 F.3d 981, 992

(1st Cir. 1995) (citing Chicago Mercantile Exch. v. Deaktor, 414

U.S. 113, 114-15 (1973)).


    B.    Invocation of the Primary Jurisdiction Doctrine
           Is not Appropriate in this Case.

As noted above, this court (Barbadoro, J.) has before it a

substantially similar consolidated, multi-district case involving

claims that the Colgate-Palmolive Company marketed its version of

an antibacterial soap with false and misleading claims.  In that

case, as here, defendant invoked the primary jurisdiction

doctrine in support of its motion to dismiss or stay plaintiffs'

claims.  The court rejected that argument in a thorough and

thoughtful opinion.  In re Colgate-Palmolive Softsoap

Antibacterial Handsoap Marketing and Sales Practices Litigation,

Case no. 12-MD-2320-PB, 2013 DNH 038 (D.N.H. March 18, 2013)

("Colgate-Palmolive").


The substance of the Colgate-Palmolive opinion need not be

recounted in detail.  It is sufficient to note that the court's

reasoning applies with equal force to this case and counsels in

favor of denying defendant's request to apply the primary

jurisdiction doctrine.  First, the issues presented in this

litigation are not "at the heart of the task assigned [to the

FDA] by Congress."  <u>Blackstone Valley Elec.</u>, 67 F.3d at 992.  As

Judge Barbadoro explained:

> [P]laintiffs seek to prove that Colgate made implied
> claims that Softsoap Antibacterial is superior to other
> products; that it misrepresented Softsoap
> Antibacterial's effectiveness; and that it misled
> consumers with unsubstantiated claims about its
> products.  To resolve those claims, the court will
> examine the state of scientific knowledge in the past,
> when Colgate made its advertising and labeling claims
> relating to Softsoap Antibacterial's safety and
> effectiveness.  It will determine what data Colgate
> possessed to support its marketing claims at the time
> they were made and whether Colgate ignored data that
> contradicted its claims.  The court will also determine
> how a reasonable consumer would have interpreted
> Colgate's marketing campaign for Softsoap
> Antibacterial.  Essentially, this litigation is
> backward-looking; it seeks to determine whether past
> conduct was misleading.
>
> The FDA's monograph process, in contrast, is forward-
> looking.  It will determine the permissible content of
> future product labels.  It will establish the
> permissible concentrations of triclosan in consumer
> hand soaps, if it permits use of the ingredient at all.
> The monograph will articulate the FDA's findings, based
> on the current state of scientific knowledge, about the
> safety and effectiveness of triclosan as used in
> consumer hand soaps.
>
> The FDA will not draw any factual conclusions about
> Colgate's past conduct.  The agency will not address
> whether Colgate's past advertising claims were
> substantiated.  Nor will the FDA's monograph shed light
> on what information Colgate knew or could have known at
> the time it made the advertising and labeling claims at
> issue in this case.  The FDA will not address whether
> Colgate's past product labels or advertising claims

14

were misleading when they were made or make any
pronouncement on how a reasonable consumer would
interpret Colgate's marketing claims.  Accordingly,
although the FDA's conclusions may touch on some issues
in this case, the case does not turn on factual
disputes that lie at the heart of the FDA's regulatory
authority.

Colgate-Palmolive, at 18-20.


    Next, the FDA's expertise is not "required to unravel

intricate, technical facts" involved in this case.  Blackstone

Valley Elec., 67 F.3d at 992.  In fact, the questions presented

in this case are relatively straight-forward, such as whether

scientific data supported Dial's marketing claims, and how a

reasonable consumer would interpret those claims.  "The FDA does

not have technical expertise related to questions of fraud and

deceit.  Courts, by contrast, routinely determine whether past

conduct or statements were false or misleading."  Colgate-

Palmolive, at 21.


    Additionally, Dial has failed to demonstrate that FDA action

in this realm would "materially aid the court" in resolving

plaintiffs' claims.  Blackstone Valley Elec. Co., 67 F.3d at 992.

Again, because the FDA's monograph process is largely forward-

looking, and because resolution of plaintiffs' claims requires

inquiry into what Dial knew when it made the challenged marketing

claims, staying this case until the FDA has issued a final

determination on the effectiveness of hand soaps containing triclosan would seem to make little sense.

And, finally, as Judge Barbadoro noted, "[a]ny minimal value that an FDA ruling might have on the resolution of this case is greatly outweighed by the harm that the plaintiffs will suffer if the action is delayed." Colgate-Palmolive, at 24.

> [T]he FDA began investigating triclosan products in 1972.  Since then, it has issued two [tentative final monographs or "TFMs"] and reopened the administrative record on multiple occasions.  Several years ago, the agency decided to split its original monograph on triclosan products into three separate monographs. Since then, the agency has missed multiple self-imposed deadlines for publishing the TFM, most recently in February 2013.
>
> Once a TFM is issued, the agency will require a minimum of fourteen more months to prepare the final monograph in accordance with the procedures set out in the regulations.  Thus, even if the TFM were issued tomorrow, the final monograph would not enter into force until May 2014 at the earliest.  Moreover, the final monograph is not the end of the road: It may be appealed to the federal courts, and the Commissioner has discretion to stay the effective date for all or part of the monograph pending final court adjudication. This long unavoidable delay in issuing a final monograph on consumer antiseptics weighs strongly in favor of rejecting the doctrine.

Id. at 24-25 (citations omitted).

For the foregoing reasons, the court concludes that this is not a case in which the doctrine of primary jurisdiction counsels

in favor of delaying resolution of plaintiffs' claims pending
further administrative action by the FDA.


III. <u>Miscellaneous Grounds for Dismissal</u>.

Finally, defendant says that various state-specific claims
advanced by some of the plaintiffs fail as a matter of law.


A.   <u>Consumer Protection Claims</u>.

Dial asserts that plaintiffs' claims under the consumer
protection statutes in Arkansas, California, Illinois, and Ohio
fail to "specify which of the statutes' enumerated unlawful
practices are allegedly at issue, leaving Dial without requisite
notice under Rules 8 and 9(b)."  Defendant's Reply Memorandum
(document no. 46) at 11-12.  The court disagrees.  The
Consolidated Amended Complaint adequately alleges that Dial
engaged in unfair and deceptive practices in marketing and
selling its Dial Complete line of products, by knowingly and
intentionally making untrue and deceptive representations about
those products' health benefits, their antibacterial efficacy,
and their superiority to other hand-washing products on the
market.


With regard to claims under the Arkansas Deceptive Trade
Practices Act ("ADTPA"), plaintiffs' have adequately alleged that

Dial's wrongful conduct caused them to suffer actual (albeit modest) damage or injury, not simply diminution in the value of the product they purchased.  At a minimum, plaintiffs' allegations are sufficient to survive a motion to dismiss.  <u>See generally</u> <u>M.S. Wholesale Plumbing, Inc. v. Univ. Sports Pubs. Co.</u>, 2008 WL 90022 *3-4 (E.D. Ark. Jan. 7, 2008).

Similarly, plaintiffs' claims under the California Consumer Legal Remedies Act ("CLRA") are sufficient to state viable a cause of action.  Dial asserts that plaintiffs failed to allege that they engaged in a "transaction" with Dial, since plaintiffs purchased Dial Complete from various retailers.  That, says Dial, is fatal to a claim under the CLRA.  Again, the court disagrees.  <u>See, e.g.</u>, <u>In re Sony Vaio Computer Notebook Trackpad Litigation</u>, 2010 WL 4262191, *5 (S.D. Cal. Oct. 28, 2010) (holding that plaintiffs stated a viable CLRA claim against Sony, despite the fact that they purchased their computer notebooks from Best Buy, rather than directly from Sony).

Finally, Dial asserts that plaintiffs' class action claims under Ohio's Consumer Sales Practices Act ("OCSPA") fail because Dial did not receive "prior notice" that its conduct was deceptive or unconscionable.  <u>See</u> Ohio Revised Code ("O.R.C.")

§ 1345.09.  Plaintiffs respond by saying that Dial had notice
that its deceptive marketing statements violated Ohio law because
the OCSPA itself makes it an unlawful deceptive act or practice
for a company to "[m]ake any representations, claims, or
assertions of fact, whether orally or in writing, which would
cause a reasonable consumer to believe such statements are true,"
Ohio Admin. Code 109:4-3-10(A) - precisely the type of claims
plaintiffs advance.  <u>See also</u> O.R.C. § 1345.02(B)(1) (defining a
deceptive trade practice to include making representations that a
product has "approval, performance characteristics, accessories,
uses, or benefits that it does not have").  Plaintiffs also
assert that Dial had prior notice of the wrongfulness of its
conduct based upon correspondence sent by plaintiffs' counsel to
Dial.  <u>See</u> Exhibits A and B to Plaintiffs' Memorandum.  Defendant
has not adequately supported (or briefed) its claim that the
asserted notice is legally insufficient under Ohio law.
Accordingly, its motion to dismiss on that basis is necessarily
denied.


    B.   <u>Express and Implied Warranty Claims</u>.

    Next, defendant moves to dismiss plaintiffs' implied
warranty claims, asserting that they are duplicative of
plaintiffs' express warranty claims.  It is, however, premature
to reach that conclusion.

19

The parties appear to agree that the relevant state laws are substantially similar and, in order to assert a viable claim for breach of implied warranty under the law of any of those states, plaintiffs must allege that Dial Complete was unfit for its intended purpose, or not of merchantable quality as promoted, packaged, or sold.  If Dial Complete's "intended purpose" is simply to act as a hand-washing soap, whether it has the antibacterial properties claimed by Dial would be of little moment (at least in the context of a breach of implied warranty claim).  Even absent any superior antibacterial properties, it still no doubt serves as a perfectly adequate hand-washing soap. But, if its intended purpose is more focused, plaintiffs would seem to have stated a viable claim.  That is to say, if the "intended purpose" of Dial Complete is to provide a hand-washing soap that, say, better prevents the spread of illness-causing bacteria, and if it lacks any greater antibacterial properties than ordinary soap, it would appear that it could plausibly be thought unfit for that particular purpose.

The parties have, however, not engaged on that issue.  Nor have they provided helpful briefing on whether determining a product's "intended purpose" is a legal or factual or mixed question.  Accordingly, it is, at best, premature to grant

defendant's motion to dismiss plaintiffs' breach of implied warranty claims.

Finally, with regard to Dial's general assertion that privity is required for express warranty claims under Illinois and Florida law, it has not adequately shown that to be an accurate statement of the governing law.  See, e.g., Smith v. Wm. Wrigley Jr. Co., 663 F. Supp. 2d 1336 (S.D. Fla. 2009) (holding, under circumstances similar to those presented in this case, that the plaintiff need not demonstrate privity in order to pursue a breach of warranty claim).

        C.    Unjust Enrichment.

        Lastly, Dial moves to dismiss plaintiffs' unjust enrichment claims, noting that "the doctrine does not apply where a contract allegedly governs the parties' relationship."  Motion to Dismiss at 31-32.  That may well be an accurate statement of the governing law.  But, consistent with Federal Rules, plaintiffs have simply pled their claims in the alternative.  See Fed. R. Civ. P. 8(d)(2).  And, the mere fact that plaintiffs have pled arguably inconsistent theories of recovery is not, standing alone, a sufficient basis to dismiss one of those claims.  The United States District Court for the District of Massachusetts recently addressed precisely this point.

21

[Defendant] also contends that the unjust enrichment
claims should be dismissed because equitable remedies
will not be granted when the plaintiffs have an
adequate remedy at law.  While [defendant] states the
law correctly, it is inappropriate to dismiss equitable
remedies at the pleading stage on this basis.  Under
the Federal Rules of Civil Procedure, plaintiffs have
the prerogative to plead alternative and even
conflicting theories of recovery.  For those reasons,
[defendant's] motion to dismiss the unjust enrichment
claims will be denied.

In re Celexa & Lexapro Marketing & Sales Practices Litig., 751 F.

Supp. 2d 277, 297 (D. Mass. 2010) (citations omitted).  See also

In re Light Cigarettes Mktg. Sales Practices Litig., 751 F. Supp.

2d 183, 191-92 (D. Me. 2010) (collecting cases denying motions to

dismiss because the federal rules permit plaintiffs to plead

inconsistent causes of action).


**Conclusion**

For the foregoing reasons, as well as those set forth in

plaintiffs' memorandum (document no. 40), it is plain that

plaintiffs have pled their claims with sufficient specificity

under Rules 8 and 9(b).  It is equally plain that this is not an

appropriate case in which to invoke the doctrine of primary

jurisdiction.  See generally Colgate-Palmolive, supra.

As to the remaining bases for defendant's motion to dismiss, none has been shown to warrant dismissal of plaintiffs' claims - at least not at this stage.  It would, however, appear that several of defendant's arguments (e.g., privity as a requirement for implied warranty claims in some states, the requirement of prior notice under Ohio's Consumer Sales Practices Act, etc.) lend themselves more properly to resolution at the summary judgment stage, based upon a more complete record and more thorough legal briefing by the parties.


Defendant's motion to dismiss (document no. 36) is, therefore, denied.  Plaintiffs' assented-to motion to dismiss, without prejudice, their request for injunctive relief (document no. 75) is granted.


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge


March 26, 2013

cc:  Tamar G. Arminak, Esq.
     Richard J. Arsenault, Esq.
     Daniel E. Becnel, Jr., Esq.
     Robert M. Becnel, Esq.
     Karl A. Bekeny, Esq.
     Paul E. Benson, Esq.
     Amy Bloom, Esq.

Jordan L. Chaikin, Esq.
Elizabeth M. Chiarello, Esq.
Salvadore Christina, Jr., Esq.
John R. Climaco, Esq.
Randal S. Crompton, Esq.
Stuart A. Davidson, Esq.
Mark J. Dearman, Esq.
Douglas P. Dehler, Esq.
Christopher M. Ellis, Esq.
John E. Galvin, III, Esq.
Jonathan H. Garside, Esq.
Mark J. Geragos, Esq.
Eric D. Holland, Esq.
D. Scott Kalish, Esq.
Lucy J. Karl, Esq.
Shelley Kaufman, Esq.
Sean T. Keith, Esq.
Adam J. Levitt, Esq.
Patricia E. Lowry, Esq.
Thomas D. Mauriello, Esq.
Robert H. Miller, Esq.
Matthew B. Moreland, Esq.
Cullin A. O'Brien, Esq.
Edward K. O'Brien, Esq.
John A. Peca, Jr., Esq.
Chad W. Pekron, Esq.
Frank E. Piscitelli, Jr., Esq.
David C. Rash, Esq.
Richard D. Raskin, Esq.
Allison W. Reimann, Esq.
Fred R. Rosenthal, Esq.
Charles E. Schaffer, Esq.
Jeffrey M. Schieber, Esq.
Miriam L. Schimmel, Esq.
Ronie M. Schmelz, Esq.
Gerard B. Schneller, Esq.
Eugene A. Schoon, Esq.
James C. Shah, Esq.
Joseph J. Siprut, Esq.
Andrew J. Sokolowski, Esq.
Steven J. Stolze, Esq.
Reginald Von Terrell, Esq.
Robert C. Tucker, Esq.
John-Mark Turner, Esq.
Patrick G. Warner, Esq.
Robert R. Younger, Esq.