UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>In re: Dial Complete Marketing</u>           Case No. 11-md-2263-SM
<u>and Sales Practices Litigation</u>          Opinion No. 2015 DNH 222

**O R D E R**

   This consolidated, multi-district litigation is brought by
consumers in Arkansas, California, Florida, Illinois, Louisiana,
Missouri, Ohio, and Wisconsin, on behalf of themselves and
similarly situated consumers in those states.  Plaintiffs say
that defendant, The Dial Corporation ("Dial"), continually
misrepresented the antibacterial properties of its "Dial
Complete" branded soaps.  They advance claims under their
respective state consumer protection/unfair trade practices
statutes, as well as statutory and common law causes of action
for breach of warranty and unjust enrichment.


   Plaintiffs move to certify a class consisting of each
state's purported class members, for a total of eight subclasses,
defined as follows: "All persons residing in [the state] who
purchased Dial Complete Antibacterial Foaming Hand Soap for
household use at any point in time from Dial Complete's
commercial launch in 2001 through the present."  Dial objects.

**Background**

Dial manufactures Dial Complete Foaming Antibacterial Hand Wash ("Dial Complete"), an antibacterial liquid hand wash. (See Def.'s Br. in Opp. to Class Certification (document no. 86) p. 4.) Since 2002, Dial has shipped 158,370,479 units to retailers and distributors in the United States for sale to retail consumers. (See Pls.' Mot. for Class Certification (document no. 57), Exh. 15 at p. 8.)

Dial Complete's product labels feature claims asserting that Dial Complete "Kills 99.99% of Germs*," that it is "#1 Doctor Recommended**," and "Kills more germs than any other liquid hand soap."[1] (See Pls.' Mot. for Class Certification (document no. 57), at Exhs. 1, 5.) In the past, Dial Complete labels have included the claims: "Superior Germ Kill," "10x More Effective Germ Kill," "Protects your family better than ordinary liquid hand soap," and "Kills 10x More Germs." (See id. at Exhs. 2-4.) Those claims appear on the product packaging of every bottle of Dial Complete sold. (See id. at Exh. 13 (Deposition of Dial's Vice President of Marketing for Personal Care Products, Christopher Sommer ("Sommer Dep.") at 156:8-11 ("On the base

---

[1]     The asterisk following "Kills 99.99% of Germs" leads to the statement "Encountered in household settings," while the double asterisk following "#1 Doctor Recommended" leads to the language "Antibacterial Liquid Hand Wash." (Def.'s Br. in Opp. to Class Certification (document no. 86), p. 5.)

level, we try and maintain a consistent look and feel, and to point of fact, we would only have, to my knowledge, one standard [product] design at any given time being produced for Dial Complete."); see also, id. at 195:16-18 ("[Dial] intend[s] to have a consistent appearance and messaging across our primary packaging.")).

The plaintiffs challenge those claims (collectively, the "challenged claims"), arguing that they are false and misleading because the label statements about germ-killing efficacy are not true, and are unsupported by scientific evidence or substantiation. (See Pls.' Br. in Supp. of Mot. for Class Certification (document no. 57) at p. 5; Consolidated Class Action Compl. ¶ 69.) According to plaintiffs, "[t]here is no credible evidence that any triclosan containing hand wash as used by consumers in community settings protects those consumers from disease or illness better than ordinary hand soaps that do not contain triclosan."[2] (Id.; see also Consolidated Class Action Compl. ¶¶ 70-76.) In support of that position, plaintiffs rely, in part, on the conclusion of their expert, Dr. Allison E. Aiello, that the veracity of the challenged claims can be

---

[2] Dial Complete's active ingredient is a compound known as triclosan. (See Def.'s Br. in Opp. to Class Certification (document no. 86) p. 5; see also Consolidated Class Action Compl. ¶ 35.)

evaluated through common evidence, and that, "based on [her] preliminary review," the challenged claims are "false, deceptive, and/or misleading." (See Pls.' Mot. for Class Certification (document no. 57), Exh. 20 at p. 25.)

Dial vigorously disputes Dr. Aiello's conclusions, as well as plaintiffs' allegations relating to Dial Complete's efficacy. Dial argues that the product has been extensively tested, and "[a]lthough other antibacterial hand soaps contain the same active ingredient as Dial Complete (triclosan), none is as effective in killing common household germs." (Def's. Br. in Opp. to Class Certification (document no. 86) at p. 5.) In support, Dial points to the conclusions of its own expert, Rhonda Jones, that the efficacy studies she has reviewed "substantiate the claims that Dial has made about Dial Complete." (Expert Report of Rhonda Jones (document no. 86-76) at p. 34.)

The Consolidated Amended Complaint advances four causes of action: violation of the consumer protection laws of Arkansas, California, Florida, Illinois, Missouri, Ohio, and Wisconsin (count one); breach of express warranty under the laws of Arkansas, California, Florida, Illinois, Louisiana, Missouri, and Ohio (count two); breach of implied warranty under the laws of Arkansas, California, Florida, Louisiana, Missouri, and Ohio

(count three); and unjust enrichment under the law of all eight states (count four).  Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23 for each of those claims.[3]

Dial posits that class treatment is not appropriate in this case for several reasons.  First, Dial argues, the class is not ascertainable at the certification stage without the need for extensive individual inquiries.  Second, Dial contends that plaintiffs cannot establish predominance or superiority using generalized proof.  According to Dial, individual issues of reliance, causation, damages, and defenses specific to the named plaintiffs or certain class members will overwhelm any common issues.  In support of its argument, Dial points to evidence in the record purporting to show that some consumers choose Dial Complete for reasons unrelated to the challenged claims, such as fragrance, bottle shape, or its foamy consistency.  (See, e.g., Def's. Br. in Opp. to Class Certification (document no. 86), Exh. 15 (Dial Hand Washing Segmentation Study))  Finally, Dial argues

---

[3]     After being pressed by Dial, plaintiffs indicated that they will identify class members through a testimonial claims form administrative process.  (See Pls.' Reply Br. in Supp. of Mot. for Class Certification (document no. 161) at p. 37.)  At oral argument on the plaintiffs' class certification motion, counsel for the plaintiffs further indicated that the plaintiffs were working with expert consultants to potentially mine consumer data from retailers that would further allow for identification of individual class members.  (See 4/16/2015 Hearing Tr. at 11-13.)

that the plaintiffs have failed to present a functional damages model, and therefore have not met their burden of demonstrating that damages can be proven on a class-wide basis.

## Discussion

### Legal Standard for Class Certification

In a purported class action, the "party seeking certification must establish 'the elements necessary for class certification: the four requirements of [Rule] 23(a) and one of the several requirements of Rule 23(b).'" <u>Kenneth R. v. Hassan</u>, 293 F.R.D. 254, 263 (D.N.H. 2013) (quoting <u>In re Relafen Antitrust Litig.</u>, 218 F.R.D. 337, 341 (D. Mass. 2003) (citing <u>Smilow v. Southwestern Bell Mobile Sys.</u>, 323 F.3d 32, 38 (1st Cir. 2003))). "Whether the movant has carried that burden is a question the district court must resolve through a rigorous analysis of Rule 23's requirements. <u>Id</u>. (citing <u>General Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 161 (1982)) (internal quotation marks omitted). "A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23] – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

The court's analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim.'" Amgen Inc. v. Connecticut Ret. Plans and Trust Funds, 133 S. Ct. 1184, 1194, (2013) (quoting Wal-Mart, 131 S. Ct. at 2551)).  But the overlap must necessarily be limited, for "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." Id. at 1194-1195.  Rather, "[m]erits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Id. at 1195.  In short, "[b]y sifting the abundant evidence through the sieve of the legal claims, [a] court [will] satisf[y] the requirement to perform a 'rigorous analysis.'" Glazer v. Whirlpool Corp., 722 F.3d 838, 852 (6th Cir. 2013) (quoting Wal-Mart, 131 S. Ct. at 2551)).

## Class Certification under Rule 23

Plaintiffs seeking to certify a class under Rule 23 must first satisfy Rule 23(a)'s requirements – numerosity, commonality, typicality and adequacy of representation – and also one of the three prerequisites set forth in Rule 23(b).  See S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87 (D. Mass. 2007) (citing Smilow, 323 F.3d at 38; Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997)).

7

There are three possible bases for class certification under Rule 23(b).  Under the third, litigation may proceed as a class action if the four criteria of Rule 23(a) are satisfied, and the court finds that: (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  See Fed. R. Civ. P. 23(b)(3).

Finally, "[i]n addition to the explicit requirements of Rule 23, courts generally recognize the 'implicit requirement' that the class definition must be sufficiently definite to allow the court, parties, and putative class members to ascertain class membership."  Kenneth R., 293 F.R.D. at 263 (citing Shanley v. Cadle, 277 F.R.D. 63, 67-68 (D. Mass. 2011)).

## **Ascertainability**

It is common sense that for a court to certify a class action, the class must be "sufficiently defined," meaning, in this circuit, that "the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."  Matamoros v. Starbucks, Corp., 699 F.3d 129, 139 (1st Cir. 2012) (quoting James Wm. Moore et al., Moore's Federal Practice § 23.21[3][a]

8

(3d ed. 2012)).  In other words, "an implicit prerequisite to class certification is that a 'class' exist[] — that is, it must be 'administratively feasible to determine whether a particular individual is a member.'"  Donovan v. Philip Morris USA, Inc., No. CIV.A. 06-12234-DJC, 2012 WL 957633, at *26 (D. Mass. Mar. 21, 2012) (quoting Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 278 (D. Mass. 2000) (citing 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1760 (2d ed. 1972))); see In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig., No. MDL 10-2193-RWZ, 2013 WL 4759649, at *3 (D. Mass. Sept. 4, 2013) ("[T]he class must be defined by objective criteria" so that it is "administratively feasible for the court to determine whether a particular individual is a member").  Courts often refer to this unremarkable fact as the ascertainability requirement.  See Donovan, 2012 WL 957633, at *26.

However, a "class need only be determinable by 'stable and objective factors' at the outset of a case; not every class member must be identified, but the class must be sufficiently ascertainable to permit a court to 'decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment.'"  Id. (quoting Kent, 190 F.R.D. at 278

(citing <u>Crosby v. Soc. Sec. Admin. of the U.S.</u>, 796 F.2d 576, 580 (1st Cir. 1986))).

In this case, Dial relies upon a recent Third Circuit case, <u>Carrera v. Bayer Corp.</u>, 727 F.3d 300 (3d Cir. 2013) and its progeny, in an attempt to graft an almost, if not completely, insurmountable burden on plaintiffs in small-claim consumer class action cases.  Dial asks this court to adopt a heightened ascertainability requirement as defined in <u>Carrera</u>, and summarized by the Seventh Circuit as follows: "(1) the class must be defined with reference to objective criteria (consistent with long-established law . . .;) and (2) there must be a 'reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'"[4]

---

[4]     As the Seventh Circuit points out in <u>Mullins</u>, 795 F.3d at 661:

> [the] Third Circuit's innovation began with <u>Marcus v. BMW of North America, LLC</u>, 687 F.3d 583 (3d Cir. 2012), where the court vacated certification of a poorly defined class.  The decisive portion of the opinion, <u>id</u>. at 592-594, certainly seems sound, but the opinion went on to caution that on remand, if defendants' records would not identify class members, the district court should not approve a method relying on "potential class members' say so," and the opinion said that reliance on class members' affidavits might not be "proper or just," <u>id</u>. at 594 (internal quotation marks omitted).  The opinion did not explain this new requirement other than to cite an easily distinguishable district court decision.

Mullins v. Direct Dial, LLC, 795 F.3d 654, 662 (7th Cir. 2015)
(quoting Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015)).


Dial argues that named plaintiffs' and the class members'
"lack of objective proof of their purchases of Dial Complete"
(e.g., the lack of receipts) render the class unascertainable,
and that Dial's due process rights would be violated if it did
not have the opportunity to challenge each potential class
member's memory regarding purchase and price, thus requiring
thousands of individualized mini-trials to establish class
membership, and rendering self-identification by affidavit
ineffective.  (Def.'s Br. in Opp. to Class Certification
(document no. 86) at pp. 37-38; see also Def.'s Surreply in Opp.
to Class Certification (document no. 175) at pp. 2-7.)  Dial
expresses similar concerns relating to whether the predominance
and superiority requirements of Rule 23(b)(3) are met in this
case.


In support of its argument, Dial points to the First
Circuit's recent decision in In re Nexium Antitrust Litig., 777
F.3d 9, 19 (1st Cir. 2015), in which the court of appeals quoted
Carrera for the proposition that a proposed class mechanism must
be administratively feasible: "[a]t the class certification
stage, the court must be satisfied that, prior to judgment, it

11

will be possible to establish a mechanism for distinguishing the
injured from the uninjured class members.  The court may proceed
with certification so long as this mechanism will be
'administratively feasible,' . . . and protective of defendants'
Seventh Amendment and due process rights."  (quoting <u>Carrera</u>, 727
F.3d at 307).

    <u>Nexium</u>, however, does not appear to support Dial's argument.
At issue in <u>Nexium</u> was whether class certification was
permissible when the class included a de minimus number of
uninjured parties.  777 F.3d at 14.  The defendant argued in part
that the class should not have been certified because the
plaintiffs had failed to establish a mechanism for distinguishing
injured from uninjured class members.  <u>Id</u>. at 18.

    After noting that the plaintiffs had yet to propose a
mechanism for limiting recovery to injured parties, the court
considered how an injury could be established:

> [Another] . . . approach would be to establish injury
> through testimony by the consumer that, given the
> choice he or she would have purchased the generic.
> Such testimony, if unrebutted, would be sufficient to
> establish injury in an individual action.  <u>And if such
> consumer testimony would be sufficient to establish
> injury in an individual suit, it follows that similar
> testimony in the form of an affidavit or declaration
> would be sufficient in a class action</u>.  There cannot be
> a more stringent burden of proof in class actions than
> in individual actions.  "Rigorous analysis," <u>[Gen. Tel.</u>

> <u>Co. Of Sw. v.] Falcon</u>, 457 U.S. [147, 161 (1982)], of
> Rule 23 requirements does not require raising the bar
> for plaintiffs higher than they would have to meet in
> individual suits.  Thus, we have confidence that a
> mechanism would exist for establishing injury at the
> liability stage of this case, compliant with the
> requirements of the Seventh Amendment and due process.

<u>Id</u>. at 20-21 (emphasis added).  Thus, the court of appeals for

this circuit has plainly supported the view that testimonial

affidavits and declarations are an acceptable methodology for

establishing class membership at the liability stage of a case.[5]

It bears mention that <u>Carrera's</u> heightened ascertainability

standard has been rejected by the Sixth and Seventh Circuits.

<u>See</u> <u>Rikos v. Procter & Gamble Co.</u>, 799 F.3d 497, 525 (6th Cir.

2015) ("We see no reason to follow <u>Carrera</u>, particularly given

the strong criticism it has attracted from other courts.");

<u>Mullins</u>, 795 F.3d 654, 662 (7th Cir. 2015) ("The Third Circuit's

approach in <u>Carrera</u>, which is at this point the high-water mark

of its developing ascertainability doctrine, goes much further

than the established meaning of ascertainability and in our view

---

[5]      In a footnote in <u>Nexium</u>, the court did distinguish the
affidavits proposed in that case ("affidavits concerning likely
future purchases of the consumers, as to which documents are not
available") from "affidavits concerning the past purchase of the
product in question." <u>Id</u>. at 21, n.17.  However, such a
distinction has little consequence in the consumer products class
action context, because most consumers <u>do</u> <u>not</u> save receipts for
small purchases, and so, "documents are <u>not</u> [generally]
available," <u>id</u>. (emphasis added), to establish class membership.

misreads Rule 23."); but see Karhu v. Vital Pharma., Inc., ___
Fed. Appx. _____, 2015 WL 3560722 (11th Cir. Jun. 9, 2015)
(applying Carrera's heightened standard).  Courts in the Ninth
Circuit and the Second Circuit have also rejected Carerra's
approach.  See McCrary v. Elations Co., LLC, No. EDCV 13-00242
JGB OP, 2014 WL 1779243, at *7 (C.D. Cal. Jan. 13, 2014) (finding
a class ascertainable where "the proposed class definition simply
identifies purchasers of Defendant's products that included the
allegedly material misrepresentations" when "the alleged
misrepresentations appeared on the actual packages of the
products purchased" because "there is no concern that the class
includes individuals who were not exposed to the
misrepresentation") (quoting Astiana v. Kashi Co., 291 F.R.D.
493, 500 (S.D. Cal. 2013)); Lilly v. Jamba Juice Co., 308 F.R.D.
231, 238 (N.D. Cal. 2014); Ebin v. Kangadis Food, Inc., 297
F.R.D. 561, 566-67 (S.D.N.Y. 2014).

    As courts rejecting Carrera's approach to ascertainability
in consumer class actions have realized, in each of those cases,
"[e]ssentially, [d]efendant's concern is that class members do
not have actual proof that they belong in the class," for
purposes of ascertainability, causation, and damages.  McCrary,
2014 WL 1779243, at *7.  However, if those arguments "were
correct, 'there would be no such thing as a consumer class

14

action.'"   Id. (quoting Ries v. Arizona Beverages USA LLC, 287
F.R.D. 523, 535 (N.D. Cal. 2012) (finding ascertainability
satisfied where class members were required to self-identify that
they purchased iced tea with "natural" on the label during the
class period)); see also Mullins, 795 F.3d at 662 ("In general,
we think imposing this stringent version of ascertainability does
not further any interest of Rule 23 that is not already
adequately protected by the Rule's explicit requirements.  On the
other side of the balance, the costs of imposing the requirement
are substantial.  The stringent version of ascertainability
effectively bars low-value consumer class actions, at least where
plaintiffs do not have documentary proof of purchases, and
sometimes even when they do."); Ebin, 297 F.R.D. at 567
(permitting self-identification in a consumer marketing
misrepresentation case and certifying the class notwithstanding
potential class members' lack of receipts because it would
"render class actions against producers almost impossible to
bring").


     For those reasons, the court is not persuaded by the
reasoning of Carrera and its progeny.  As expressed by a member
of the Third Circuit in a concurring opinion in Byrd v. Aaron's
Inc.:

In 2012 [the Third Circuit] adopted a second element,
namely, requiring district courts to make certain that
there is "a reliable, administratively feasible" method
of determining who fits into the class, thereby
imposing a heightened evidentiary burden.  Marcus, 687
F.3d at 594.  We have precluded class certification
unless there can be objective proof "beyond mere
affidavits" that someone is actually a class member.
Id.; accord Carrera v. Bayer Corp., 727 F.3d 300, 308-
12 (3d Cir. 2013).  This concept has gained traction in
recent years.  I submit that this "business record" or
"paper trail" requirement is ill-advised.  In most
low-value consumer class actions, prospective class
members are unlikely to have documentary proof of
purchase, because very few people keep receipts from
drug stores or grocery stores.  This should not be the
reason to deny certification of a class.  As Judge
Ambro's dissent from the denial of the petition for
rehearing en banc in Carrera noted, "[w]here a
defendant's lack of records ... make it more difficult
to ascertain the members of an otherwise objectively
verifiable low-value class, the consumers who make up
that class should not be made to suffer."  Carrera v.
Bayer Corp., No. 12-2621, 2014 WL 3887938, at *3 (3d
Cir. May 2, 2014) (Ambro, J. dissenting).

Records are not the only way to prove that someone is
in a class.  It is the trial judge's province to
determine what proof may be required at the claims
submission and claims administration stage.  It is up
to the judge overseeing the class action to decide what
she will accept as proof when approving the claim form.
Could not the judge decide that, in addition to an
individual's "say so" that he is a member of the class,
the claimant needs to submit an affidavit from another
household member or from his doctor corroborating his
assertion that he did, in fact, take Bayer aspirin?  Is
that not permissible and appropriate?  Yet, we
foreclose this process at the outset of the case by
requiring that plaintiffs conjure up all the ways that
they might find the evidence sufficient to approve
someone as a class member.

This puts the class action cart before the horse and
confuses the class certification process, as this case
makes manifest.  The irony of this result is that it
thwarts "[t]he policy at the very core of the class
action mechanism," i.e., "to overcome the problem that

> small recoveries do not provide the incentive for any
> individual to bring a solo action prosecuting his or
> her rights." Amchem Prods., Inc. v. Windsor, 521 U.S.
> 591, 617, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)
> (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344
> (7th Cir. 1997)).  Indeed, "[a] class action solves
> this problem by aggregating the relatively paltry
> potential recoveries into something worth someone's
> (usually an attorney's) labor." Id.  We have
> effectively thwarted small-value consumer class actions
> by defining ascertainability in such a way that
> consumer classes will necessarily fail to satisfy for
> lack of adequate substantiation.  Consumers now need to
> keep a receipt or a can, bottle, tube, or wrapper of
> the offending consumer items in order to succeed in
> bringing a class action.

784 F.3d 154, 173-75 (3d Cir. 2015), as amended (Apr. 28, 2015)

(Rendell, J., concurring); see also Daniel Luks, Ascertainability

in the Third Circuit: Name that Class Member, 82 Fordham L. Rev.

2359, 2393-2397 (2014) (urging the rejection of the Carrera

standard of ascertainability "so as not to destroy consumer class

actions"); Lilly, 308 F.R.D. at 238 ("Adopting the Carrera

approach would have significant negative ramifications for the

ability to obtain redress for consumer injuries.  Few people

retain receipts for low-priced goods, since there is little

possibility they will need them later to verify that they made

the purchase.  Yet it is precisely in circumstances like these,

where the injury to any individual consumer is small, but the

cumulative injury to consumers as a group is substantial, that

the class certification mechanism provides one of its most

important social benefits.  In the absence of a class action, the

injury would go unredressed."); <u>Ebin</u>, 297 F.R.D. at 567 ("the
class action device, at its very core, is designed for cases like
this where a large number of consumers have been defrauded but no
one consumer has suffered an injury sufficiently large as to
justify bringing an individual lawsuit.").

Indeed, the leading treatise on class action lawsuits has
confirmed that a "simple statement or affidavit may be sufficient
where claims are small or are not amenable to ready
verification."  Alba Conte & Herbert B. Newberg, <u>Newberg on Class
Actions</u> § 18:54 (4th ed.); <u>see also</u> <u>Mullins</u>, 795 F.3d at 667 ("In
most cases, the expected recovery is so small that we question
whether many people would be willing to sign affidavits under
penalty of perjury saying that they purchased the good or
service."); <u>Donovan v. Philip Morris USA</u>, 2012 WL 957633, at *26-
27 (suggesting methods other than customer receipts to verify
purchase of consumer products are acceptable, including incentive
programs and customer self-identification where incentive to lie
would be minimal, when class definition is sufficiently clear).

Moreover, to the extent that Dial's argument is motivated by
concerns about the submission of fraudulent or mistaken claims,
Dial "has provided no evidence . . . that claims of this
magnitude have provoked the widespread submission of inaccurate

18

or fraudulent claims." <u>Mullins</u>, 795 F.3d at 667.  But, even if
Dial had submitted such evidence, "courts are not without tools
to combat this problem during the claims administration process.
They can rely, as they have for decades, on claim administrators,
various auditing processes, sampling for fraud detection,
follow-up notices to explain the claims process, and other
techniques tailored by the parties and the court to take into
account the size of the claims, the cost of the techniques, and
an empirical assessment of the likelihood of fraud or
inaccuracy."  <u>Id</u>.

Finally, every bottle of Dial Complete sold featured the
challenged claims.  As discussed by the court in <u>Ault v. J.M.
Smucker Co.</u>, "[c]ourts across the country have expressed doubt
that a class is ascertainable in cases . . . where only certain
products on the market during the class period contain the
allegedly misleading labels."  310 F.R.D. 59, 65 (S.D.N.Y. 2015)
(discussing cases).  However, such cases are distinguishable from
this action, where "the uniformity of the products" makes "it far
easier for a potential class member to recall whether they had
purchased the good containing the misrepresentation."  <u>Id</u>.
(quoting <u>Randolph v. J.M. Smucker Co.</u>, 303 F.R.D. 679, 689 (S.D.
Fla. 2014)).

19

In sum, the plaintiffs proposed class definition is "not vague," and it adequately "identifies a particular group of individuals" (purchasers of Dial Complete).  Mullins, 795 F.3d at 660.  The plaintiffs' proposed classes are defined by objective criteria — whether the potential class members purchased Dial Complete containing the challenged claims on the packaging during a fixed time period — and the potential class members can be feasibly identified by sworn affidavits of purchase, among other methods.  The plaintiffs have not impermissibly created a "fail-safe" class, a class "defined in terms of success on the merits." Id.  Consequently, the classes are sufficiently ascertainable to warrant class certification.[6]

---

[6]    As the court explained in Donovan, "what [the defendant] complains of is a potential administrative burden in determining who is a class member, but this issue is 'primarily one of manageability, and not ascertainability.'"  Donovan v. Philip Morris USA, Inc., 268 F.R.D. 1, 9 (D. Mass. 2010); see also Mullins, 795 F.3d at 663 ("concern about administrative inconvenience is better addressed by the explicit requirements of Rule 23(b)(3), which requires that the class device be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'  One relevant factor is 'the likely difficulties in managing a class action.'") (quoting Fed. R. Civ. P. 23(b)(3)(D)).  Thus, Dial's further concerns about individual issues of reliance, causation, and damages will be addressed in the court's consideration of the Rule 23(b)(3) factors of predominance and superiority below.

**Requirements of Fed. R. Civ. P. 23(a)**

## I.  Numerosity

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement 'has two components, the number of class members and the practicability of joining them in a single case.'" Kenneth R. v. Hassan, 293 F.R.D. at 265 (quoting Rolland v. Celluci, No. CIV A 98-30208-KPN, 1999 WL 34815562, at *3 (D. Mass. Feb. 2, 1999)). "[N]umbers alone are not usually determinative," rather both the number of potential class members and their geographic distribution are relevant to the numerosity determination. In re Tyco Int'l, Ltd., No. MD-02-1335-PB, 2006 WL 2349338, at *1 (D.N.H. Aug. 15, 2006) (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985)).

Dial does not meaningfully contest that this element is satisfied, and the evidence before the court suggests that Dial has shipped millions of units of Dial Complete to retailers and distributors in the United States since the product's launch. (See Pls.'s Mot. for Class Certification (document no. 57), Exh. 15 at p. 8). Based on that volume, the class is sufficiently numerous to satisfy Rule 23(a).

21

## II.  __Commonality__

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Although a court need find only a 'single common question,' a certain rigor, as prescribed by the Supreme Court in Wal-Mart, must attend the commonality inquiry."  Kenneth R., 293 F.R.D. at 265 (quoting Wal-Mart, 131 S. Ct. at 2556 (quotation and alterations omitted)).  The Supreme Court explained that commonality "requires the plaintiff to demonstrate that the class members have 'suffered the same injury.'"  Id. at 266 (quoting Wal-Mart, 131 S. Ct. at 2551).  The Court further stated that "claims must depend upon a common contention" that is "capable of classwide resolution — which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart, 131 S. Ct. at 2551.  "'What matters to class certification,'" the Court emphasized, "'is not the raising of common questions — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'"  Kenneth R., 293 F.R.D. at 266 (quoting Wal-Mart, 131 S. Ct. at 2551 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis in original).

In this case, plaintiffs have identified four questions of law or fact common to potential class members:

1.  Did the Dial Corporation claim that consumer use of Dial Complete provides greater health benefit than consumer use of regular soap and water on the packaging of every bottle of Dial Complete sold?

2.  Were Dial's representations false, misleading, or deceptive?

3.  Did the challenged claims have any economic effect on consumers?

4.  How much, if anything, must Dial pay in restitutionary damages to consumers who purchased Dial Complete, if the challenged claims are shown to be false, deceptive or misleading?

(See Pls.' Reply Br. in Supp. of Mot. for Class Certification (document no. 161) at p. 3.)

Dial does not meaningfully contest that such common questions exist, only whether they predominate over individual questions of reliance, causation, and damages sufficiently to satisfy Rule 23(b)(3).  After careful consideration, the court is satisfied that answers to the common questions, even excluding the damages question, would "drive the resolution of the litigation."  Wal-Mart, 131 S. Ct. at 2551; see Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 757 (7th Cir. 2014) (finding "that the question whether the [defendant's] packaging was likely to deceive a reasonable consumer is common.  The claims of every

23

class member will rise or fall on the resolution of that
question.").

### III. **Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the
representative parties [be] typical of the claims or defenses of
the class." Fed. R. Civ. P. 23(a)(3). "The typicality analysis
is designed to ensure that class representatives, in pursuing
their own interests, concurrently will advance those of the
class." In re Hannaford Bros. Co. Customer Data Sec. Breach
Litig., 293 F.R.D. 21, 27 (D. Me. 2013). The claims of class
representatives "are 'typical' when their claims 'arise from the
same event or practice or course of conduct that gives rise to
the claims of other class members, and . . . are based on the
same legal theory.'" Id. (quoting Garcia-Rubiera v. Calderon,
570 F.3d 443, 460 (1st Cir. 2009)) (further citation omitted).

In other words, the typicality requirement is satisfied if
the class representative's claims are not likely to "be subject
to unique defenses that would divert attention from the common
claims of the class," In re Tyco Int'l, Ltd. Multidistrict
Litig., No. 03-cv-1352-PB, 2007 WL 1703067, at *2 (D.N.H. June
12, 2007) (quoting In re Bank of Boston Corp. Sec. Litig., 762
F. Supp. 1525, 1532 (D. Mass. 1991) (quotations omitted)), and

24

where the court need not "make highly fact-specific or
individualized determinations in order to establish a defendant's
liability to each class member."  Id. (quoting Collazo v.
Calderon, 212 F.R.D. 437, 443 (D.P.R. 2002) (quotations
omitted)).

Typicality "should be determined with reference to the
defendant's actions, not with respect to particularized defenses
it might have against certain class members."  In re Neurontin
Mktg. & Sale Practices Litig., 244 F.R.D. 89, 106 (D. Mass. 2007)
(quoting Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir.
1996) (quotations omitted)).

According to Dial, the named plaintiffs' claims are not
typical because they are subject to unique spoliation defenses
due to the named plaintiffs' failure to retain receipts for their
purchases of Dial or other hand soaps since the parties exchanged
discovery requests in March 2012.  This argument is premised on
the notion that the named plaintiffs' and potential class
members' receipts for Dial Complete and substitute products are
relevant to the determination of class membership and damages.
Dial argues that the plaintiffs' failure to preserve receipts is
prejudicial because Dial will be unable to determine: (1) whether

plaintiffs ever purchased Dial Complete; (2) whether plaintiffs
paid more for Dial Complete than an alternative soap.

Spoliation "can be defined as the failure to preserve
evidence that is relevant to pending or potential litigation."
Jimenez-Sanchez v. Caribbean Restaurants, LLC, 483 F. Supp. 2d
140, 143 (D.P.R. 2007).  However, as discussed above in the
context of ascertainability, because potential class members are
highly unlikely to retain receipts for such small purchases, the
plaintiffs are not required to rely solely on receipts to prove
class membership.  Thus, the named plaintiffs' and potential
class members' receipts are not strictly relevant to the claims
or defenses in this case, rendering Dial's purported individual
spoliation defenses inapplicable.  See Jimenez-Sanchez, 483 F.
Supp. 2d at 143.[7]

Because the named plaintiffs' claims arise from the same
alleged misrepresentations on the packaging of Dial Complete as
those of the potential class members, they are typical of the
alleged class claims.

---

[7]      Moreover, as the plaintiffs point out, one of Dial's
arguments against certification is that few, if any, potential
class members will have retained their receipts for purchases of
Dial Complete or substitute products.  Thus, to the extent that
spoliation might conceivably be thought an issue, it ultimately
becomes a common defense to the class claims rather than a unique
individual defense.

**IV.  Adequacy**

Rule 23(a)(4)'s adequacy requirement will be satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy requirement has two components.  First, plaintiffs must show that "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).  Second, plaintiffs must show "that the interests of the [class representatives] will not conflict with the interests of any of the class members." Id.

A.  Adequacy of Class Counsel

Dial does not argue that class counsel is inadequate, and the court having previously found class counsel adequate (see document no. 20) ("Order granting Partially Assented-to Majority Plaintiffs Group's Motion for Designation of Lucy J. Karl as Interim Lead Counsel and Approval of Proposed Leadership Structure"), class counsel satisfies the adequacy requirement.

B.  Adequacy of Class Representatives

Class representatives are not required to have "expert knowledge" about the case, and may rely heavily on class counsel for guidance. In re Relafen Antitrust Litig., 231 F.R.D. 52, 69

27

(D. Mass. 2005) (further citation omitted).  "A 'perceived lack of subjective interest' is ordinarily insufficient to disqualify proposed class representatives."  In re Tyco, 2006 WL 2349338, at *2 (quoting Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 728 (11th Cir. 1987)).  However, a named plaintiff would be inadequate if he or she possesses "so little knowledge of and involvement in the class action that [he or she] [is] unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys."  Id. (quoting Kirkpatrick, 827 F.2d at 727).  The adequacy requirement is satisfied "unless [the class representatives'] participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case."  Id. (quoting Kirkpatrick, 827 F.2d at 728).

Dial argues that the named plaintiffs are inadequate because of the alleged receipt-related spoliation defenses uniquely applicable to them — an argument the court has already rejected. Dial further argues that the named plaintiffs are inadequate because they do not understand or agree with the theory of the case, and because one of the named plaintiffs, Eric Capdeville, has been effectively absent from the case and another named plaintiff, Alicia Gentile, has filed for bankruptcy while failing to disclose her claim.

28

Having read the transcripts submitted by the plaintiffs and
Dial in this case, the court is satisfied that the named
plaintiffs are sufficiently cognizant of the claims and issues in
this case to serve as named plaintiffs, with three exceptions.

**David Walls (Illinois)**.  The first exception is David Walls
of Illinois.  In his deposition testimony, Mr. Walls testified
that he "can't recall . . . buying [Dial Complete] at all, let
alone reading the labels on it, because [his] wife buys the
majority of those products."  (Def.'s Opp. to Class
Certification, (document no. 86) Exh. 13 (Deposition of David
Walls at 58:2-15).)  Mr. Walls further testified that he could
not recall any occasion on which he actually purchased Dial
Complete.  (Id. at 57:8-13.)

As discussed below in the context of predominance, while the
state laws under which the purported classes can maintain these
claims may not require individualized fact-finding of reliance
and proximate causation, at a minimum the named plaintiffs and
class members must be able to affirm under oath that they
purchased Dial Complete during the proposed class period.
Otherwise, the plaintiff has not suffered an injury sufficient to
confer Article III standing and fulfill the requirement that the
"representatives must have the essential characteristic common to

29

the claim of the class" in order to serve as a class representative.  In re Wellnx Mktg. & Sales Practices Litig., 673 F. Supp. 2d 43, 54-55 (D. Mass. 2009) (providing that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent" to establish Article III standing).  Because Mr. Walls cannot swear under oath that he actually purchased Dial Complete, he is not an adequate class representative.  Mr. Walls' inadequacy, however, is of no moment to the Illinois class because its interests are adequately represented by another named plaintiff, Kristina Pearson.

**Eric Capdeville (Louisiana)**.  The second exception is Eric Capdeville of Louisiana.  Dial argues that Mr. Capdeville has not met the minimum standard required to serve as named plaintiff for the Louisiana class because, despite repeated attempts by Dial, he has never appeared for deposition.  The plaintiffs admit that Mr. Capdeville's "poor health prevent[s] his continued participation as the proposed representative of the Louisiana class," but argue that they should be permitted to substitute a new named plaintiff for Mr. Capdeville.  (Pls.' Reply Br. in Supp. of Mot. for Class Certification (document no. 161) at p. 45.)  Several months have passed since the plaintiffs made

30

this argument, but they have yet to petition the court to substitute a new plaintiff for Mr. Capdeville.  Given the undisputed evidence of Mr. Capdeville's inability to fulfill his duties as a named plaintiff, the court concludes that he cannot meet the adequacy requirement.  Accordingly, and as set forth below, the plaintiffs may move to substitute a representative Louisiana plaintiff who adequately represents the putative subclass.

**Alicia Gentile (California)**.  Dial's objections to Alicia Gentile's adequacy as a named plaintiff are well taken.  <u>See</u> <u>Rader v. Teva Parenteral Medicines, Inc.</u>, 276 F.R.D. 524, 529 (D. Nev. 2011) ("Plaintiff filed for personal bankruptcy approximately one year after he filed the present class action complaint.  Thus, his claims are the property of his bankruptcy estate, and only the bankruptcy trustee can bring, litigate, or settle causes of action that are property of the debtor's estate. <u>See</u> <u>Lopez v. Specialty Rests. Corp.</u>, 283 B.R. 22, 28 (9th Cir. BAP 2002).  'Because [Plaintiff] lacks standing to sue, [he] may not serve as a class representative.'  <u>Deloach v. Provident Health Servs., Inc.</u>, No. CV493-120, 1993 WL 850445, at *2 (S.D. Ga. Sept. 1, 1993)").  Ms. Gentile is not an adequate class representative because she lacks standing to pursue her own claims.  But, as with Mr. Walls, Ms. Gentile's inadequacy is of

no moment to the California subclass because named plaintiff
Sonia Herrera adequately represents its interests.

## Rule 23(b)(3) Requirements

In analyzing the predominance and superiority requirements
of Rule 23(b)(3), this circuit has instructed that the "class
certification prerequisites should be construed in light of the
underlying objectives of class actions." Smilow v. Southwestern
Bell Mobile Sys., 323 F.3d 32, 41 (1st Cir. 2003) (citing S.S.
Partridge & K.J. Miller, Some Practical Considerations for
Defending and Settling Products Liability and Consumer Class
Actions, 74 Tul. L. Rev. 2125, 2129 (2000); Mace v. Van Ru Credit
Corp., 109 F.3d 338, 344 (7th Cir. 1997); Fed. R. Civ. P.
23(b)(3) advisory committee's note (construing predominance as a
prerequisite for obtaining economies of scale)).

The court in Smilow further explained that "Rule 23(b)(3) is
intended to be a less stringent requirement than Rule 23(b)(1) or
(b)(2)." Id. (citing Amchem Prods., Inc., 521 U.S. at 615
("Framed for situations in which class-action treatment is not as
clearly called for as it is in Rule 23(b)(1) and (b)(2)
situations, Rule 23(b)(3) permits certification where class suit
may nevertheless be convenient and desirable.") (internal
quotations omitted)).  "The core purpose of Rule 23(b)(3),"

32

<u>Smilow</u> provides, "is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." <u>Id</u>. (citing <u>Amchem Prods., Inc.</u>, 521 U.S. at 617). It is with those important, and sometimes overlooked, principles in mind that the court turns to the Rule 23(b)(3) factors.

## I.  <u>Superiority</u>

Rule 23(b)(3) provides four non-exhaustive factors relevant to the court's superiority inquiry: (1) the class members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

All four non-exclusive factors, and the policy supporting consumer product class action litigation, point to a finding that a class action is the superior method for adjudicating this case. It does not appear that individual litigation has been initiated to adjudicate these claims, and "[g]iven the size of the claims, individual members have virtually no interest in individually

controlling the prosecution of separate actions." <u>In re</u>
<u>Hannaford Bros.</u>, 293 F.R.D. 21, 33-34 (D. Me. 2013).

Given that this is multi-district litigation and the cases
will be eventually transferred back to their home districts for
trial, there are no concerns about forum.  With respect to
manageability, there is no evidence that this consumer class
action will be any more difficult to manage than any other
consumer class action.  Consequently, given the large number of
potential class members and small value of individual claims, not
only is a class action the superior method of resolving this
case, it is the very sort of case for which the Rule 23(b)(3)
class action mechanism was intended.

## II.  <u>Predominance</u>

Dial contends that rather than predominating, the admittedly
common issues identified by plaintiffs would be overwhelmed by
individual issues of reliance, causation, injury, and damages.
Dial also argues that its defenses to the plaintiffs' claims
raise individualized questions, most notably relating to the
applicable statutes of limitation for each putative class member.
Finally, Dial challenges the methodologies put forth by the
plaintiffs' experts for ascertaining damages on a classwide basis

as unrelated to plaintiffs' theory of the case and ineffective to show that damages are susceptible to classwide proof.[8]

For a court to certify a class pursuant to Rule 23(b)(3), the rule "requires merely that common issues predominate, not that all issues be common to the class."  <u>Smilow</u>, 323 F.3d at 39.  "Rule 23(b)(3) 'does <u>not</u> require a plaintiff seeking class certification to prove that each element of her claim is susceptible of classwide proof.'  Rather the question is whether there is 'reason to think that [individualized] questions will <u>overwhelm</u> common ones and render class certification inappropriate."  <u>In re Nexium Antitrust Litig.</u>, 777 F.3d at 21 (quoting <u>Amgen</u>, 133 S. Ct. at 1196, and <u>Halliburton Co. v. Erica P. John Fund, Inc.</u>, 134 S. Ct. 2398, 2412 (2014)) (emphases in original).

## A.   Underlying State Claims

"Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of

---

[8]     To the extent spoliation is an issue raised by Dial, as pointed out in the typicality analysis above, it is better thought of as a likely defense common to most, if not all, of the named plaintiffs and potential class members.  That militates in favor of finding that common issues predominate.  <u>See Smilow</u>, 323 F.3d at 39 ("Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.").

the underlying cause of action."  Erica P. John Fund, Inc. v.
Halliburton Co., 131 S. Ct. 2179, 2184 (2011) (quotations
omitted).  Dial contends that the state claims at issue require
proof of either individual reliance or causation, and argues that
determining which class members relied on the alleged
misrepresentations and were harmed thereby would require
innumerable mini-trials that would overshadow the litigation of
the common question addressing the truth or falsity of the
challenged claims.  Plaintiffs counter that under the laws of all
eight relevant states, individual issues of reliance and
causation are irrelevant, because those issues are analyzed from
the perspective of either the named plaintiff or a reasonable
consumer.

It is necessary to determine, then, whether the claims
plaintiffs seek to certify in each state require a showing of
reliance and/or causation, and, if so, whether those elements can
be established on a classwide basis.  See In re ConAgra Foods,
Inc., 90 F. Supp. 3d 919, 982 (C.D. Cal. 2015).

### ARKANSAS

In Arkansas, plaintiffs seeks class certification for their
Arkansas Deceptive Trade Practices Act claim, breach of express

36

warranty claim, breach of implied warranty claim, and their claim
for unjust enrichment.


      1.   <u>Arkansas Deceptive Trade Practices Act (A.C.A. § 4-88</u>
         <u>101 et seq.)</u>

"When a person 'suffers actual damage or injury as a result
of an offense or violation' of the Arkansas Deceptive Trade
Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-113(f), a cause of
action may be brought for any 'unconscionable, false, or
deceptive act or practice in business, commerce, or trade,' Ark.
Code Ann § 4-88-107(a)(10)."  <u>White v. Volkswagen Grp. of Am.,
Inc.</u>, No. 2:11 CV 02243, 2013 WL 685298, at *6 (W.D. Ark. Feb.
25, 2013).


According to Dial, the ADTPA requires both proof of
individual reliance and individual proof of causation.  But,
Arkansas courts have allowed ADTPA class actions to proceed where
there are common questions concerning the defendant's alleged
wrongdoing that must be resolved for all class members.  <u>See</u>
<u>DIRECTV, Inc. v. Murray</u>, 423 S.W.3d 555, 565 (Ark. 2012) ("Our
law is now well settled that the mere fact that individual issues
and defenses may be raised by the defendant cannot defeat class
certification where there are common questions concerning the
defendant's alleged wrongdoing that must be resolved for all
class members."); <u>see also GGNSC Arkadelphia, LLC v. Lamb by &</u>

through Williams, 465 S.W.826, 834-35 (Ark. 2015), reh'g denied
(July 23, 2015) ("[W]e have said time and time again, the mere
fact that individual issues or defenses may be raised regarding
the recovery of individual class members cannot defeat class
certification where there are common questions that must be
resolved for all class members"); Philip Morris Companies, Inc.
v. Miner, 462 S.W.3d 313, 317-18 (Ark. 2015) ("We conclude that
proof of misrepresentation does not turn on each class member's
smoking habit because the key inquiry under the ADTPA focuses on
the defendant's actions.").[9]

       Here, the core of the plaintiffs' ADTPA claim rests on
Dial's allegedly deceptive conduct in marketing Dial Complete.
The alleged misrepresentations appear on the packaging of each
and every container of Dial Complete sold.  Whether those claims
are, indeed, false or misleading is the significant common
question to be resolved for all class members.

_____

       [9]    The case law on this topic is far from clear.  For
example, the federal district court in Jarrett v. Panasonic Corp.
Of N. Am., 8 F. Supp. 3d 1074, 1089 (E.D. Ark. 2013), held that
an "ADTPA claim requires each class member to prove reliance on
the allegedly fraudulent conduct and that such fraudulent conduct
caused damage."  However, the case relied upon in Jarrett, and
relied upon by Dial in support of its argument, White v.
Volkswagen Grp. of Am., Inc., 2013 WL 685298, at *8-9, simply
does not stand for that proposition.  In White, the court was
considering whether the plaintiff had adequately pled an ADPTA
claim for Fed. R. Civ. P. 12(b)(6) purposes, not whether the
ADPTA requires each individual class member to prove reliance.

Plaintiffs' Arkansas consumer protection claim is capable of classwide proof.

   2.   Breach of Express Warranty (Ark. Code. Ann. § 4-2-313)

   Under Arkansas law, "'[a]n affirmation of fact must be part of the basis of the parties' bargain to be an express warranty;'" if a buyer "is not influenced by the statement in making his or her purchase, the statement is not a basis of the bargain.'"  In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig., 955 F. Supp. 2d 1311, 1340-41 (S.D. Fla. 2013) (quoting Ciba-Geigy Corp. v. Alter, 834 S.W.2d 136, 147 (Ark. 1992)).  "In other words, under Arkansas law, 'reliance is an essential element of an express warranty claim.'"  Id. (quoting Brooks v. Remington Arms Co., No. 1:09-cv-01054, 2010 WL 6971894, at *5 (W.D. Ark. Oct. 27, 2010)).

   Thus, Dial correctly posits that individualized proof is required as to whether each potential class member was influenced by or relied upon Dial's purported misrepresentations when purchasing the soap: "If the consumer was not influenced by the representation . . ., the representation . . . cannot be a basis for the bargain and no express warranty exists."  Clayton v. Batesville Casket Co., No. 5:07-CV-00214 JMM, 2009 WL 2448164, at *5 (E.D. Ark. Aug. 10, 2009).  Because individual factual

determinations would overwhelm the common questions posed, the court declines to certify plaintiffs' breach of express warranty claim.

3. <u>Breach of Implied Warranty of Merchantability (Ark. Code. Ann. § 4-2-314)</u>

To recover on a breach of implied warranty of merchantability claim under Arkansas law, "the plaintiff must prove 1) that he has sustained damages; 2) that the product sold to him was not merchantable, i.e., fit for the ordinary purpose for which such goods are used; 3) that this unmerchantable condition was a proximate cause of his damages; and 4) that he was a person whom the defendant might reasonably expect to use or be affected by the product." <u>E.I. Du Pont de Nemours & Co. v. Dillaha</u>, 659 S.W.2d 756, 758 (Ark. 1983).

The plaintiffs cite to <u>M.S. Wholesale Plumbing, Inc. v. Univ. Sports Publ'cns Co., Inc.</u>, No. 4:07-cv-730, 2008 WL 90022, at *5 (E.D. Ark. Jan. 7, 2008), in support of their argument that individual proof of reliance and causation is not required. In <u>M.S. Wholesale Plumbing</u>, a case involving a breach of an implied contract, the court stated: "The terms of a contract implied in fact can be inferred from conduct, and the conduct of the parties is to be evaluated from the point of view of a reasonable person, considering all of the attendant circumstances." 2008 WL 90022,

at *5; but see <u>Jarrett v. Panasonic Corp. of N. Am.</u>, 8 F. Supp. 3d 1074, 1089 (E.D. Ark. 2013) (stating that individual issues of fact would make class certification inappropriate because "a breach of implied warranty of merchantability claim requires each class member to prove that the alleged unmerchantable condition was a proximate cause of her damages.").[10]

Arkansas law in this area is murky, at best.  However, taking into consideration the Arkansas courts' expressed "certify now, decertify later" approach, see <u>Farmers Union Mut. Ins. Co. v. Robertson</u>, 370 S.W.3d 179, 187 (Ark. 2010),[11] the court

_____

[10]    In support of its argument that individual proof of causation is required, Dial cites to <u>Boshears v. Certainteed Corp.</u>, No. 4:05CV01052-WRW, 2007 WL 1381652, at *3 (E.D. Ark. May 10, 2007).  <u>Boshears</u> is of no assistance in resolving the issue, as it involved an individual litigant, not a class action, and contains no substantive discussion of the cause of action's causation requirement.  Dial also cites to <u>Clayton v. Batesville Casket Co.</u>, 2009 WL 2448164, at *5-6, but <u>Clayton</u> is distinguishable on this point because the court there found that plaintiff had not set forth sufficient class-wide proof that the caskets at issue failed, or that conditions of the caskets when purchased caused the class members' damages.

[11]    Generally, the Arkansas Supreme Court has supported a bifurcated approach to class actions, which allows courts to divide a case into two phases: (1) certification for resolution of the preliminary, common issues; and (2) decertification for the resolution of the individual issues.  See <u>General Motors Corp. v. Bryant</u>, 374 Ark. 38, 49 (2008) (observing that "challenges based on the statutes of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability."); see also <u>Farmers Union Mut. Ins. Co.</u>, 370 S.W.3d at 189 ("we adhere

concludes that the plaintiffs' implied warranty claim is capable, under Arkansas law, of classwide proof, employing the "reasonable person" standard to determine the elements of reliance and causation.

4.   <u>Unjust Enrichment</u>

To establish a claim for unjust enrichment under Arkansas law, "a party must have received something of value, to which he was not entitled and which he must restore.'"   <u>In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.</u>, 955 F. Supp. 2d 1311, 1336 (S.D. Fla. 2013) (citing <u>Varner v.</u>

---

to our well-settled precedent that allows class actions to be certified first when there are predominating threshold issues of liability common to the class, even though there may be individualized issues that come later requiring either the creation of subclasses or decertification altogether. . . .  And, although Appellant asserts that Arkansas 'stands alone' in its approach, we have not been presented with any convincing argument that gives us cause to reconsider our prior decisions concluding that our approach is what we believe to be the more efficient method.").

Thus, Arkansas law suggests that "predominance does not fail simply because there are individual issues that may arise; the central question to be resolved . . . is whether there are overarching issues that can be addressed before resolving individual issues."  <u>GGNSC Arkadelphia, LLC v. Lamb by & through Williams</u>, 465 S.W. at 835.  Here, reliance and causation, elements of liability, would not preclude certification under Arkansas' certification rules, because those elements lend themselves to classwide proof.  So, here too, class-wide proof is available and does not preclude certification under federal procedural rules.

Peterson Farms, 371 F.3d 1011, 1018 (8th Cir. 2004) (applying
Arkansas law)).


     Plaintiffs point to no authority supporting their argument
that this claim is capable of classwide proof, and a cursory
review of the pertinent case law indicates that adjudicating an
Arkansas unjust enrichment claim will depend on the factual
circumstances surrounding purchases of Dial Complete made by each
individual buyer at issue.  See Thompson v. Bayer Corp., No. 07-
00017, 2009 WL 2424352, at *3 (E.D. Ark. Aug. 6, 2009) ("At a
minimum, Plaintiff must provide evidence that each class member
saw the alleged false advertisements and subsequently purchased
WeightSmart in order to prove that each class member is entitled
to restitution."); see also Jarrett, 8 F. Supp. 3d at 1089
("Defendants' liability for unjust enrichment to a particular
plaintiff depends on the factual circumstances of the particular
purchase at issue.").  Accordingly, the court finds this claim
incapable of classwide proof.


<div align="center"><strong>CALIFORNIA</strong></div>

     In California, plaintiffs seek class certification for the
following claims: the California Consumer Legal Remedies Act
(Civil Code § 1750 et seq.), California's False Advertising Law
(California Business and Professions Code § 17500 et seq.),

43

California Unfair Competition Law (California Business and
Professions Code § 17200 et seq.), breach of express warranty,
breach of implied warranty, and unjust enrichment.

As a preliminary matter, Dial generally argues that
California state and federal courts have declined to certify
classes "where there is no common method for proving that a class
member was exposed to an alleged misrepresentation, or that the
exposure factored into the individual's decision to purchase the
product." (Def.'s Br. in Opp. to Class Certification (document
no. 86) at p. 17.)  This action, however, is unlike the cases
upon which Dial relies, like Mazza v. Am. Honda Motor Co., 666
F.3d 581, 595 (9th Cir. 2012), where the court denied
certification largely because "it is likely that many class
members were never exposed to the allegedly misleading
advertisements, insofar as advertising of the challenged system
was very limited."  See also Pfizer Inc. v. Superior Court, 182
Cal. App. 4th 622, 631-32 (Cal. App. Ct. 2010); Sevidal v. Target
Corp., 189 Cal. App. 4th 905, 926 (Cal. App. Ct. 2010).  Here,
each Dial Complete consumer was directly exposed to the purported
misrepresentations: they were printed on the packaging of each

44

and every bottle of Dial Complete sold.[12]   Therefore, Dial's

argument lacks merit.


1.   <u>Consumer Protection Claims</u>

"Courts generally consider claims under California's Unfair

Competition Law ("UCL"), False Advertising Law ("FAL") and

Consumers Legal Remedies Act ("CLRA") together."   <u>In re ConAgra</u>

<u>Foods, Inc.</u>, 90 F. Supp. 3d at 982-83.   "Each statute allows

plaintiffs to establish materiality and reliance (i.e., causation

and injury) by showing that a reasonable person would have

considered the defendant's representation material."   <u>Id</u>.[13]

_____

[12]     Dial correctly points out that it made different
specific claims about Dial Complete at different points in time.
(<u>See</u> Def.'s Br. in Opp. to Class Certification (document no. 86)
at p. 15.)   However, that the exact language Dial used to promote
Dial Complete was modified over the years does not alter the fact
that the message Dial conveyed about Dial Complete was uniform
and consistent: that Dial Complete provided a greater health
benefit to consumers than ordinary liquid hand soap.   And, that
allegedly deceptive message is at the core of plaintiffs' claims.
That the allegedly deceptive message was worded slightly
differently over a period of years does not preclude a finding
that common issues predominate.   <u>Cf</u>. <u>In re NJOY, Inc. Consumer</u>
<u>Class Action Litig.</u>, No. CV1400428MMMJEMX, 2015 WL 4881091, at
*34 (C.D. Cal. Aug. 14, 2015) ("Assuming the advertisements were
materially misleading, and conveyed a safety message, the fact
that they were worded differently does not preclude a finding
that materiality can be proved on a classwide basis.").

[13]     Dial's reliance on <u>Cohen v. DIRECTV, Inc.</u>, 101 Cal.
Rptr. 3d 37, 47-48 (Cal. 2d DCA 2009), is misplaced.   Subsequent
decisions interpreting California's UCL have stated: "To the
extent the court of appeal's decision in <u>Cohen</u> might be read to
require individualized evidence of class members' reliance, it is
inconsistent with [the California Supreme Court's decision in]
<u>In re Tobacco II cases</u>, [46 Cal. 4th 298 (2009)]."   <u>Greenwood v.</u>

"A misrepresentation is material if 'a reasonable man would attach importance to its existence or nonexistence' in deciding whether to engage in the conduct that caused his injury."  <u>In re Celexa & Lexapro Mktg. & Sales Practices Litig.</u>, No. CIV.A. 10 10154 NMG, 2014 WL 3908126, at *7 (D. Mass. Aug. 8, 2014) (quoting <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 327 (2009)) (additional citations omitted).  "Therefore, the determination of materiality, and thus reliance, is determined using objective criteria that apply to the entire class and do not require individualized determination."  <u>McCrary</u>, 2014 WL 1779243, at *14.

Dial argues that it is improper to presume that the challenged claims were material to consumers because individuals take into account numerous factors when buying hand soaps.  (<u>See</u> Def.'s Br. in Opp. to Class Certification (document no. 86) at p. 13.)  For example, Dial argues, many consumers purchased Dial Complete because of its "foaming, fragrance, bottle design or any other product features."  (Def.'s Surreply in Opp. to Class Certification (document no. 175) at p. 8.)  As support, Dial points to consumer research that "shows that many consumers do not read soap packaging or are unfamiliar with Dial Complete's

---

<u>Compucredit Corp.</u>, No. CIV. 08 04878 CW, 2010 WL 4807095, at *5 (N.D. Cal. Nov. 19, 2010).

labeling claims." (Def.'s Br. in Opp. to Class Certification
(document no. 86) at p. 13.)


As the court has previously stated, the challenged claims
were printed on the label of each and every Dial Complete bottle
sold. Those claims consistently asserted that Dial Complete was
more effective than ordinary liquid hand soap. That message —
that Dial Complete would "[p]rotect[] your family better than
ordinary liquid hand soap"[14] — is the message that Dial intended
to convey to consumers.[15] Dial would not have chosen to promote
Dial Complete's purported effectiveness if Dial did not believe
that claim was a material selling point, one to which a
reasonable buyer would attach importance when purchasing soap.
See Beck-Ellman v. Kaz USA, Inc., 283 F.R.D. 558, 568 (S.D. Cal.
2012) ("For the purposes of class certification, it is sufficient
that the alleged material omission was part of a common
advertising scheme to which the entire class was exposed.") For
this reason, the court finds that the evidence in the record is
sufficient to support a finding that the challenged claims were

----

[14] See, e.g., Pl.'s Motion for Class Certification, Exh. 3
(document no. 58-2).

[15] See Pl.'s Motion for Class Certification (document no.
57), Exh. 13 (Sommer Deposition at 229:14-23) (indicating that
Dial is "trying to – convey, because it's a claim that no other
product is making, [that] we kill a lot of germs and this is a
higher level than other products . . . It's a point of difference
with this product.").

material, and that individualized evidence is therefore not
required.  Plaintiffs' California consumer protection claims are
subject to classwide proof.


    2.   <u>Breach of Express Warranty (Cal. Comm. Code § 2313)</u>

      To prevail on a breach of express warranty claim under
California law, a plaintiff need not prove reliance on specific
promises or representations.  <u>In re ConAgra Foods, Inc.</u>, 90
F. Supp. 3d at 984.  California courts have found breach of
express warranty claims appropriate for class treatment where
"whether defendant misrepresented its product and whether such
misrepresentations breached warranties are issues common to
members of the class."  <u>Id</u>. at 985.  Class treatment is
appropriate if plaintiffs can demonstrate the materiality of the
alleged misrepresentation.  <u>Id</u>.


      Having previously determined that the evidence in the record
is sufficient to support a finding that the challenged claims
were material, the court concludes that plaintiffs' breach of
express warranty claim are capable of classwide proof.


    3.   <u>Breach of Implied Warranty (Cal. Comm. Code § 2314)</u>

      While neither party raises the issue, an action for breach
of an implied warranty under California law requires that the

plaintiff be in vertical privity with the defendant.  <u>Allen v.</u>
<u>Hyland's Inc.</u>, 300 F.R.D. 643, 669 (C.D. Cal. 2014); <u>see also</u> <u>In</u>
<u>re ConAgra Foods, Inc.</u>, 90 F. Supp. 3d at 986-87.  The Ninth
Circuit has recognized an exception to that privity requirement
where the purchaser of a product relied on representations made
by the manufacturer in "written labels or advertisements,"
<u>Clemens v. DaimlerChrysler Corp.</u>, 534 F.3d 1017, 1023 (9th Cir.
2008), but the exception is seemingly applicable only to express
warranties.  <u>See</u> <u>Allen</u>, 300 F.R.D at 669, n.24 (relying on <u>Burr</u>
<u>v. Sherwin Williams Co.</u>, 42 Cal. 2d 682, 696 (1954)).


        Because each member of the California class would need to
establish vertical privity with Dial in order to prove an implied
warranty claim, individual issues would predominate.[16]
Therefore, certification of a class to pursue this claim is not
appropriate.


        4.  <u>Unjust Enrichment</u>

        [I]n California, there is not a standalone cause
        of action for 'unjust enrichment,' which is synonymous
        with 'restitution.'  However, unjust enrichment and
        restitution are not irrelevant in California law.
        Rather, they describe the theory underlying a claim
        that a defendant has been unjustly conferred a benefit

---

        [16]    "A buyer and seller stand in privity if they are in
adjoining links of the distribution chain." <u>Clemens</u>, 534 F.3d at
1023 (citing <u>Osborne v. Subaru of Am. Inc.</u>, 198 Cal. App. 3d 646,
656 n.6 (Cal. App. Ct. 1988)).

through mistake, fraud, coercion, or request.  The
return of that benefit is the remedy typically sought
in a quasi-contract cause of action.  When a plaintiff
alleges unjust enrichment, a court may construe the
cause of action as a quasi-contract claim seeking
restitution.

Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir.

2015) (internal quotations and citations omitted).  A plaintiff

seeking to recover restitution damages must demonstrate a

defendant's (1) receipt of a benefit; and (2) unjust retention of

the benefit at the expense of another.  Cartwright v. Viking

Indus., Inc., No. 2:07-CV-02159FCDEFB, 2009 WL 2982887, at *13

(E.D. Cal. Sept. 14, 2009).


To be sure, some courts interpreting these requirements have

found that unjust enrichment claims are capable of class-wide

proof, reasoning that these claims "require common proof of the

defendant's conduct and raise the same legal issues for all class

members."  Beck-Ellman v. Kaz USA, Inc., 283 F.R.D. at 568; see

also Astiana v. Kashi Co., 291 F.R.D. 493, 505 (S.D. Cal. 2013).

But, as the Ninth Circuit stated in Berger v. Home Depot USA,

Inc., unjust enrichment "does not turn merely on the transfer of

money or other benefits from one party to another – it requires

injustice."  741 F.3d 1061, 1070 (9th Cir. 2014) (upholding

district court's denial of class certification on unjust

enrichment claim) (citing Doe I v. Wal-Mart Stores, Inc., 572

50

F.3d 677, 684 (9th Cir. 2009) ("The fact that one person benefits
another is not, by itself, sufficient to require restitution.
The person receiving the benefit is required to make restitution
only if the circumstances are such that, as between the two
individuals, it is unjust for the person to retain it.")).

In light of that requirement, the court is not persuaded
that plaintiffs' unjust enrichment claim can be established by
common proof.  Plaintiffs have defined the purported class in
such a way that, by definition, it includes consumers with a
variety of motivations for purchasing Dial Complete.  Those
varying motivations for purchase do not defeat predominance when
the claim asserted is capable of generalized proof.  But, an
"unjust enrichment" claim would typically require a factual
inquiry into the circumstances of each purchase to determine
whether it would be "unjust" for the defendant to retain the
alleged benefit.  See 1 McLaughlin on Class Actions § 5:60 (11th
ed.) ("The majority view is that unjust enrichment claims usually
are not amenable to class treatment because the claim requires
evaluation of the individual circumstances of each claimant to
determine whether a benefit was conferred on defendant and
whether the circumstances surrounding each transaction would make
it inequitable for the Defendant to fail to return the benefit to
each claimant.").  Given the necessity for individualized

51

inquiries into motivations and purchasing decisions, as well as the benefit defendant derived by the buyer (e.g., effective use of the soap, purchased at a substantial discount) of each class member, the court concludes that the California plaintiffs' unjust enrichment claim is incapable of classwide proof.

## FLORIDA

The Florida plaintiffs seek certification for claims based on the following: Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.204(1), et seq.) ("FDUTPA"), the Florida Misleading Advertising Statute, (Fla. Stat. Ann. § 817.41 et seq.), breach of express warranty, breach of implied warranty, and unjust enrichment.

1.  Consumer Protection Claims

    (a)  FDUTPA

Under Florida law, a plaintiff "need not prove reliance on the allegedly false statement to recover damages under the FDUTPA, but rather a plaintiff must simply prove than an objective reasonable person would have been deceived." Fitzpatrick v. Gen. Mills, Inc., 635 F.3d 1279, 1283 (11th Cir. 2011); see also Randolph v. J.M. Smucker Co., 303 F.R.D. 679, 692 (S.D. Fla. 2014) (stating that a "plaintiff need not demonstrate actual reliance in order to prove causation," but instead "that

the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.").

However, "some Florida courts have required that plaintiffs present individualized proof to satisfy the FDUTPA's causation element." In re Glaceau Vitaminwater Mktg. & Sales Practice Litig., No. 11-CV-00925 DLI RML, 2013 WL 3490349, at *7 (E.D.N.Y. July 10, 2013) (collecting cases); see also In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig., No. 05 C 4742, 2012 WL 1015806, at *10 (N.D. Ill. Mar. 22, 2012) ("[The Florida Supreme Court] has not spoken on the issue of the interaction between the reliance and causation elements of an FDUTPA claim, but Florida appellate courts have.  Those decisions control, unless there are persuasive indications that the Florida Supreme Court would decide the issue differently. . . .  Although there is conflicting precedent in the Florida state appellate courts . . ., the great weight of recent authority in those courts, as set forth above, supports Sears's position and holds that causation typically requires individualized proof.").  However, as the Sixth Circuit recently stated in Rikos v. Proctor & Gamble Co., where the defendant has made a "generally uniform material misrepresentation to the entire class," courts have held that plaintiffs do not need to show individualized causation.  799 F.3d 497, 515-16 (6th Cir. 2015) (interpreting Florida law).

Since there can be no real question that Dial made a purported "generally uniform material misrepresentation," the court concludes that plaintiffs' FDUTPA's claim is capable of classwide proof.

### (b)    Florida Misleading Advertising Statute

Plaintiffs seeking to recover under Florida's Misleading Advertising Statute must "prove each of the elements of common law fraud." <u>Kaser v. Swann</u>, 141 F.R.D. 337, 341 (M.D. Fl. (1991). Courts have held that: "[p]laintiffs are not entitled to a presumption of fraud; <u>each</u> <u>plaintiff</u> must show how he has been defrauded." <u>Id</u>. (emphasis added). Therefore, the court finds that this claim is not capable of classwide proof.

### 2.    Breach of Express Warranty (Fla. Stat. Ann. § 672.313)

The weight of authority seems to suggest that an express warranty claim under Florida law is not capable of classwide proof. Indeed, in the one Florida case cited by plaintiffs that involves an express warranty claim, <u>Fitzpatrick v. Gen. Mills, Inc.</u>, the court found that the express warranty claim was not capable of classwide proof:

> Under Florida law, only an "affirmation of fact or promise" that "becomes part of the basis of the bargain creates an express warranty."  Fla. Stat.
> § 672.313(1)(a).  General Mills' promise that Yo-Plus helps improve digestive health, therefore, could only

create an express warranty if that "affirmation of fact
or promise" was "part of the basis" that caused a
consumer to purchase Yo-Plus.  Put differently, there
is no express warranty that could be breached unless a
plaintiff actually relied on General Mills' promises
about Yo-Plus in reaching a decision to purchase it.
Accordingly, each plaintiff must show that General
Mills' alleged misrepresentations concerning Yo-Plus'
digestive health benefits was 'part of the basis' in
his or her decision to buy Yo-Plus.

263 F.R.D. 687, 695 (S.D. Fla. 2010), vacated on other grounds,

635 F.3d 1279 (11th Cir. 2011).  Other courts have held

similarly.  See, e.g., City of St. Petersburg v. Total

Containment, Inc., 265 F.R.D. 630, 639-40 (S.D. Fla. 2010)

(declining to certify express warranty claim and stating:

"Plaintiffs' claims for breach of express warranty . . . would

require putative class members to present a substantial amount of

individualized proof in order to establish the elements of their

claims.  In order to establish liability for a breach of express

warranty claim, Plaintiffs need to establish both causation and

damages.  See McCraney v. Ford Motor Co., 282 So.2d 878, 878

(Fla. Ct. App. (1st Dist.) 1973).").  Consistently with that

authority, the court declines to certify the Florida plaintiff's

express warranty claim.


    3.  Breach of Implied Warranty (Fla. Stat. Ann. § 672.314)

    Florida courts have held that proof of individual reliance

is necessary to establish a breach of implied warranty as well.

Cohen v. Implant Innovations, Inc., 259 F.R.D. 617, 624 (S.D. Fl. 2008) (finding that magistrate judge properly declined to certify plaintiff's breach of implied warranty claim because "reliance is a necessary element of a breach of implied warranties claim" and therefore each putative class member would have to show reliance on an individualized basis) (citing Light v. Weldarc Co., 569 So.2d 1302, 1305 (Fla. Ct. App. (5th Dist.) 1990)).[17] Plaintiffs fail to provide any authority to the contrary. In light of the applicable precedent and because plaintiffs bear the burden of demonstrating the predominance of common questions, the court finds that the Florida plaintiffs' breach of implied warranty claim is incapable of classwide proof.

---

[17] Additionally, while neither party addresses the point, Florida courts likely require privity of contract between the parties for a breach of implied warranty of merchantability claim. See Smith v. Wm. Wrigley Jr. Co., 663 F. Supp. 2d 1336, 1342 (S.D. Fla. 2009) ("The Florida Supreme Court has clarified the law in West [v. Caterpillar Tractor Co., 226 So.2d 80 (Fla. 1976),] and Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla. 1988), in cases involving implied warranty claims. See David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1321-23 (S.D. Fla. 2009) (containing a comprehensive discussion of the evolution of implied warranty claims under Florida law). It is now well-settled that, barring certain exceptions, '[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity.' Mesa v. BMW of N. Am., LLC, 904 So.2d 450, 458 (Fla. Dist. Ct. App. 2005)."); see also David, 629 F. Supp. 2d at 1323. But the court having determined that the plaintiffs' breach of implied warranty claim is incapable of classwide proof for other reasons, the court need not decide this issue.

    4.  <u>Unjust Enrichment</u>

    "In Florida, the essential elements of a claim for unjust
enrichment are: (1) a benefit conferred upon a defendant by the
plaintiff, (2) the defendant's appreciation of the benefit, and
(3) the defendant's acceptance and retention of the benefit under
circumstances that make it inequitable for him to retain it
without paying the value thereof." <u>Vega v. T-Mobile USA, Inc.</u>,
564 F.3d 1256, 1274 (11th Cir. 2009).


    The Eleventh Circuit Court of Appeals, interpreting Florida
law, has stated: "common questions will rarely, if ever,
predominate an unjust enrichment claim, the resolution of which
turns on individualized facts." <u>Vega</u>, 564 F.3d at 1274.  "That
is because a claim for unjust enrichment requires the court to
assess whether the individual circumstances of each particular
claim would result in inequity.  In this case, plaintiffs would
each need to present evidence that they individually conferred a
benefit upon one of the Defendants and that the circumstances
surrounding that transaction would make it inequitable for that
Defendant to fail to return the benefit to that Plaintiff." <u>City
of St. Petersburg v. Total Containment, Inc.</u>, 265 F.R.D. at 640.
That is, whether it would be <u>inequitable</u> for Dial to retain the
revenue received from a particular buyer turns on the buyer's

individual motivation, circumstances, and even individualized benefits derived from using the soap.

Nevertheless, some Florida courts have determined that common questions can predominate in unjust enrichment claims when the "defendant's conduct is the same as to all class members of the putative class." James D. Hinson Elec. Contracting Co. v. BellSouth Telecommunications, Inc., 275 F.R.D. 638, 647 (M.D. Fla. 2011); see also County of Monroe, Florida v. Priceline.com, Inc., 265 F.R.D. 659, 671 (S.D. Fla. 2010); Arvida/JMB Partners v. Council of Villages, Inc., 733 So.2d 1026, 1031 (Fla. Ct. App. (4th Dist.) 1999). As the court in County of Monroe, 265 F.R.D. at 671, explained, "the Eleventh Circuit's underlying concern is that unjust enrichment claims typically require individualized inquiries into the equities of each class member's interaction with each defendant. This concern, however, is not present here, [where] it is undisputed that Defendants' business operations are the same as to all members of the putative class."

To be sure, Dial's "alleged misconduct was common to all class members." In re ConAgra Foods, Inc., 90 F. Supp. 3d at 994. Nevertheless, as the ConAgra court observed:

> [C]ases in which plaintiffs assert that they were
> misled by a misrepresentation in advertising or on a
> product label and that they purchased a product they

58

> otherwise would not have are the type that require
> individualized inquiries similar to those discussed by
> the Vega court.  Where individualized inquiries
> concerning the reasons class members purchased a
> product are required, Florida courts find that those
> inquiries predominate over common questions, and that
> class certification is inappropriate.

Id. (analyzing cases).  So it is in this case.  Accordingly, the
court concludes that the Florida plaintiffs' unjust enrichment
claim is not capable of classwide proof.

<div align="center">

**ILLINOIS**

</div>

The Illinois plaintiffs seek certification for the following
claims: Illinois Consumer Fraud and Deceptive Business Practices
Act, breach of express warranty, and unjust enrichment.


1.  Illinois Consumer Fraud and Deceptive Business
    Practices Act (815 ILCS 505, et seq.)

A claim under the Illinois Consumer Fraud and Deceptive
Business Practices Act ("ICFA") requires: "(1) a deceptive act or
practice by the defendant, (2) the defendant's intent that the
plaintiff rely on the deception, (3) the occurrence of the
deception in a course of conduct involving trade or commerce, and
(4) actual damage to the plaintiff that is (5) a result of the
deception."  Rikos v. Procter & Gamble Co., 799 F.3d at 514
(citing De Bouse v. Bayer AG, 922 N.E.2d 309, 313 (Ill. App. Ct.
2009).  "When the deceptive act alleged is a misrepresentation,

<div align="center">

59

</div>

that misrepresentation must be 'material' [which is] established by applying a reasonable person standard." Id. (internal citations omitted).  While proof of individual reliance is not required to establish an ICFA claim, to establish the last two elements of the claim, plaintiffs must demonstrate that the "allegedly deceptive act proximately caused any damages suffered by the plaintiff." Id.

However, "where the representation being challenged was made to all putative class members, Illinois courts have concluded that causation is susceptible of classwide proof and that individualized inquiries concerning causation do not predominate if plaintiffs are able to adduce sufficient evidence that the representation was material." Id. (citing In re ConAgra Foods, 90 F. Supp. 3d at 997 (collecting cases)).

Because the court previously determined that the evidence in the record is sufficient to support a finding of materiality, the plaintiffs' ICFA claim is capable of classwide proof.

2.   Breach of Express Warranty (810 Ill. Comp. Stat. 5/2-313)

To state a claim for breach of warranty under Illinois law, "the buyer must allege that the seller made: (1) an affirmation of fact or promise made to the plaintiff; (2) relating to the

goods; (3) which becomes part of the basis of the bargain; and (4) guaranteeing that the goods will conform to the affirmation or promise." Intl. Bd. of Teamsters Local 734 Health & Welfare Trust Fund v. Phillip Morris, Inc., 34 F. Supp. 2d 656, 664 (N.D. Ill. 1998) aff'd sub nom. Intl. Bd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc., 196 F.3d 818 (7th Cir. 1999).

Illinois courts have held that a seller's affirmations and promises relating to goods create a rebuttable presumption of reliance by a buyer. In re General Motors Corp. Dex-Cool Products Liability Litig., 241 F.R.D. 305, 320 (S.D. Ill. 2007). Therefore, a seller's representations are presumed to be part of the basis of the bargain, regardless of the buyer's reliance, unless the seller can show otherwise by affirmative proof. See Felled v. Singleton, 705 N.E.2d 930, 934 (Ill. Ct. App. 1999) (holding that representations made during the bargaining process for used cars are presumed to be part of the basis of the bargain unless seller can demonstrate that they are not); Crest Container Corp. v. R.H. Bishop Co., 445 N.E.2d 19, 24 (Ill. Ct. App. 1982) ("Such affirmations made during a bargain become a basis of the bargain unless clear affirmative proof shows otherwise.").

61

Such a rebuttable presumption makes the claim incapable of classwide proof, since "individual issues of reliance will still need to be litigated." <u>Mowbray v. Waste Management Holdings, Inc.</u>, 189 F.R.D. 194, 198 (D. Mass. 1999) (interpreting Illinois law). Therefore, the court declines to certify the Illinois plaintiff's breach of express warranty claim.

3.   <u>Unjust Enrichment</u>

To state a claim for unjust enrichment under Illinois law, a plaintiff must allege (1) the defendant unjustly retained a benefit to the plaintiff's detriment; and (2) the defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience. <u>In re ConAgra Foods, Inc.</u>, 90 F. Supp. 3d at 1000 (citing <u>Drury v. County of McLean</u>, 89 Ill. 2d 417, 425-26 (1982) and <u>Kenneke v. First National Bank</u>, 65 Ill. App. 3d 10, 12 (1978)).

In <u>Cleary v. Philip Morris Inc.</u>, 656 F.3d 511, 517 (7th Cir. 2011), the Seventh Circuit stated: "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim and, of course, unjust enrichment will stand or fall with the related claim." And, "[i]n cases where plaintiffs plead ICFA and unjust enrichment claims based on the same deceptive and/or

62

fraudulent conduct, Illinois courts have applied the same
predominance analysis to both claims." In re ConAgra Foods, 90
F. Supp. 3d at 1000.

However, such an approach ignores the fact that proving
unjust enrichment — by its very elements — requires consideration
of individual equities to determine whether it would be unjust
for Dial to retain any benefit conferred upon it in exchange for
the soap it sold.  Stated another way, an ICFA claim may be
capable of classwide proof because the cause of action does not
require proof of individual reliance.  But, an unjust enrichment
claim does require additional proof of inequity – and that is not
susceptible to proof on a classwide basis.  As discussed above in
the context of the California plaintiffs' unjust enrichment
claim, the problem is largely a function of how plaintiffs have
defined the class.  As defined, the purported class would
include, for example, consumers who would not have acted any
differently had they known that Dial Complete was not more
effective than ordinary hand soap.  See Cleary, 656 F.3d at 519-
520 (upholding dismissal of unjust enrichment claim because
plaintiffs' theory of recovery could not establish that
defendants' retention of the revenue paid by a consumer was to
each consumer's detriment).  For some consumers, "the defendants'
retention of the [purported benefit] is not a detriment to them."

Id. at 519.[18]   Thus, a class member's right to recover for unjust enrichment would necessarily require individualized inquiry into the equities, making the Illinois plaintiffs' unjust enrichment claim incapable of classwide proof.

<div align="center">

**LOUISIANA**

</div>

The Louisiana plaintiffs seek certification for the following claims: breach of express warranty, redhibition (implied warranty), and unjust enrichment.

1.   Breach of Express Warranty (La. R. § 9:2800.51, et seq.)

To prove an express warranty claim under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. § 9:2800.51 et seq., a plaintiff must establish that: (1) the manufacturer made an express warranty regarding the product; (2) the plaintiff was induced to use the product because of that warranty; (3) the product failed to conform to that express warranty; and (4) the plaintiff's damage was proximately caused because the express warranty was untrue.   Caboni v. General Motors Corp., 278 F.3d 448, 452 (5th Cir. 2002).

---

[18]   In Cleary, 656 F.3d at 519, the Seventh Circuit did state that defendants' continued retention of money could conceivably be to the plaintiffs' detriment in situations, like here, where plaintiffs have alleged that "revenue was obtained by deceiving the plaintiffs."   However, the statement was made in dicta, and does not alter the court's analysis.

Dial does not argue that Louisiana law requires proof of
reliance for an LPLA claim, but contends that the statute
requires each putative class member to establish that Dial's
actions were a proximate cause of their purported injury. (See
Def.'s Opp. to Class Certification, Appendix 2 at p. 10.)  In
support of that proposition, Dial cites to Brandner v. Abbott
Labs., Inc., No. CIV.A. 10-3242, 2012 WL 195540, at *4 (E.D. La.
Jan. 23, 2012), where the court stated that an LPLA claim
requires that "each putative class member must establish that
[defendant's] actions were a proximate cause of his or her
injury."

Plaintiffs fail to provide any contrary authority, or to
even meaningfully distinguish Brandner.[19]  (See Pls.' Reply in
Supp. of Class Cert., Exh. 2 at p. 10.)  Because it is the
plaintiffs' burden as the proponents of class certification to

---

[19]    Brandner involved a motion for class certification in
connection with the defendant's nationwide recall of all Similac
powdered infant formula produced at a facility where beetles were
observed in a batch of finished product. Brandner, 2012 WL
195540, at *1.  The court held that to establish proximate cause,
the plaintiff would be required to establish proof of medical
causation, which included both general causation and specific
causation.  Id. at *4.  The latter, the court found, would
require a highly individualized inquiry, thus defeating the
purpose of class certification.  Id.  In the court's view,
Brander is distinguishable.  However, because the plaintiffs fail
to point the court to any authority that supports their argument
and because the court's own research has not found any persuasive
authority, the point is forfeited and the court declines to
certify the Louisiana breach of express warranty claim.

demonstrate the predominance of common questions, and because they have failed to carry that burden — indeed, have forfeited the argument by failing to fully brief it — the court declines to certify the Louisiana plaintiffs' breach of express warranty claim.

2.  Breach of Implied Warranty (La. Civ. Code Art. 2475, 2520)

Louisiana courts have held that redhibition claims are capable of classwide proof.  For example, in Mire v. EatelCorp., a purported class action filed on behalf of all consumers who had purchased a particular phone and had not been adequately informed by the defendant that the phone could only be used on the defendant's network, the defendant argued on appeal that the trial court had improperly certified the plaintiffs' redhibition claim because it involved subjective issues of individual knowledge and reliance.  849 So.2d 608, 613 (La. Ct. App. 1st Cir. 2003).  The appellate court disagreed, stating: "the inquiry under a redhibition claim does not involve the buyer's subjective knowledge or reliance, but rather an objective inquiry into the deficiency and whether it diminishes the product's value or renders it so inconvenient that the reasonable buyer would not have purchased it had he known of the deficiency."  Id. at 614.[20]

---

[20]   Dial argues that individual issues will predominate because individual proof of causation is required.  However, the

Louisiana case law on this topic is far from clear, however. See, e.g., LeBlanc v. Exxon Mobil Corp., No. CIV.A. 14-201-SDD, 2015 WL 1221560, at *3 (M.D. La. Mar. 17, 2015).  Nevertheless, the court finds Mire instructive and persuasive, and therefore concludes that the plaintiffs' redhibition claim is capable of classwide proof.

3.  Unjust Enrichment

"Under Louisiana law, unjust enrichment has five elements: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of justification or cause for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature." Richard v. Wal-Mart Stores, Inc., 559 F.3d 341, 345-46 (5th Cir. 2009) (citations omitted).

---

cases upon which Dial relies are distinguishable.  In both Brandner v. Abbott Labs., Inc., 2012 WL 195540, at *9, and Welch v. Atlas Roofing Corp., No. CIV.A. 07-2711, 2007 WL 3245444, at *6 (E.D. La. Nov. 2, 2007), the plaintiffs could not establish that the products at issue were uniformly defective for all class members.  And, at issue in Waters v. Bayer Corp., was an individual plaintiff's failure to effectively establish the causation element of a redhibition claim, not whether causation could be effectively established on a classwide basis.  No. 01-1819, 2006 WL 725820, at *2 (E.D. La. Mar. 22, 2006).

Louisiana courts have held that, given the essential elements of the cause of action, unjust enrichment claims are incapable of classwide proof.  See LeBlanc, 2015 WL 1221560, at *4 (stating that determination of applicability of unjust enrichment claim will require "a legal determination of which class members have no other viable claim under the law.  For those individuals able to assert a claim of unjust enrichment, individualized proof of the nature, extent, and degree of impoverishment or damage is related to the alleged enrichment.") (citing Mouton v. State, 525 So.2d 1136, 1142 (La. Ct. App. 1988)); see also Bauer v. Dean Morris, L.L.P., No. CIV.A. 08-5013, 2011 WL 3924963, at *6 (E.D. La. Sept. 7, 2011) ("plaintiffs' claims for unjust enrichment do not present common issues of liability. . . .  Of the five requisites for liability, only the element of 'no other available remedy at law' is susceptible to common analysis and resolution.  The other elements require assessments of the specific facts and circumstances of each plaintiff's claim which would mandate a series of mini-trials, a necessity which class action litigation was designed to avert.").

Because the essential elements of the Louisiana plaintiff's unjust enrichment claim do not lend themselves to classwide proof, certification of that claim is not appropriate.

68

**MISSOURI**

The Missouri plaintiffs seek certification for the following claims: Missouri Merchandising Practices Act, breach of express warranty, breach of implied warranty, and unjust enrichment.

    1.    <u>Missouri Merchandising Practices Act (Mo. Ann. Stat. § 407.020 et seq.)</u>

The Missouri Merchandising Practices Act ("MMPA") "specifically authorizes class actions where an unlawful practice has caused similar injury to numerous other persons." <u>Hope v. Nissan N. Am., Inc.</u>, 353 S.W.3d 68, 81 (Mo. Ct. App. 2011) (citations omitted). As stated by the court in <u>Hope</u>, "[t]he fact that class actions are specifically provided for by statute does not necessarily mean MMPA class actions should be certified; nor does public policy suggest otherwise. However, the fact that the MMPA specifically authorizes class actions is pertinent to consideration of class certification motions." 353 S.W.3d at 81-82.

Dial does not argue that the MMPA requires individual proof of reliance, but does argue that it requires individual proof of causation, relying on <u>Plubell v. Merck & Co., Inc.</u>, 289 S.W.3d 707, 714, (Mo. App. Ct. 2009). <u>Plubell</u>, however, does not stand for the cited proposition. In <u>Plubell</u>, the defendant argued that each plaintiff would be required to show (1) causation – that is

69

that he or she would not have used the product had the risks been
known, and (2) the amount that each plaintiff would have paid for
an alternative product.  The court rejected both of those
arguments.  First, the court found that "class members are not
individually required to show what they would or would not have
done had the product not been misrepresented and the risks
known."  Id. at 714.  Second, the court found that the plaintiffs
were not required to prove "'loss' by individually showing the
cost of alternative therapy," and that, by stating that the
product was worth less than the product as represented, "they
stated an objectively ascertainable loss under the MMPA using the
benefit-of-the-bargain rule."  Id. at 715.[21]


        Accordingly, the court finds that the plaintiffs' MMPA claim
is capable of classwide proof.

---

        [21]    Dial also relies upon In re BPA Liability Litig., but
that case does not support its position either.   No.
08-1967-MD-W-ODS, 2011 WL 6740338, at *6 (W.D. Mo. Dec. 22,
2011).  The court in In re BPA denied certification of the
plaintiffs' MMPA claim because the plaintiffs were unable to
establish that materiality could be proven on a classwide basis.
Id. ("just because materiality is an objective inquiry does not
mean it is to be determined in a vacuum, especially when the
undisclosed fact is a scientific debate or controversy.").  Here,
in contrast, the evidence in the record is sufficient to support
a finding that the challenged claims were material.

2.   <u>Breach of Express Warranty (Mo. Rev. Stat. §400.2-313)</u>

Missouri courts have held that breach of express warranty claims are not capable of classwide proof because these claims require proof that each individual class member knew of and relied on the warranty.  See, <u>e.g.</u>, <u>Hope v. Nissan N. Am., Inc.</u>, 353 S.W.3d at 86 ("Because each class member's claim for breach of express warranty would rely on an individual determination of whether they had in fact read or seen the marketing materials, brochures, catalogs, and advertisements that the Plaintiffs purport were a material factor in inducing each FX Vehicle owner into purchasing the car, the claims include an individual issue that predominates over the common issue of mere ownership."); <u>see also</u> <u>Smith v. Brown & Williamson Tobacco Corp.</u>, 174 F.R.D. 90, 97 (W.D. Mo. 1997 ("claims that Defendant breached expressed warranties are permeated with individual issues because these claims require proof that purchasers were induced to make purchases based on affirmative representations").  Plaintiffs fail to point to any Missouri authority to the contrary.  The court declines to certify the Missouri plaintiffs' breach of express warranty claim.

3.   <u>Breach of Implied Warranty (Mo. Rev. Stat. § 400.2-314)</u>

"To prove a claim for breach of implied warranty of merchantability in Missouri, a plaintiff must show: (1) that a

71

merchant sold goods, (2) which were not 'merchantable' at the
time of the sale, (3) injury and damages to the plaintiff or his
property (4) which were caused proximately or in fact by the
defective nature of the goods, and (5) notice to the seller of
the injury."  Hope, 353 S.W.3d at 90 (citation omitted).

Whether implied warranty claims are suitable for classwide
proof under Missouri law is unclear.  See Hope, 353 S.W.3d at 91-
92 (reversing trial court's decision to certify implied warranty
claim, and stating: "[c]lass membership would require individual
determinations of whether each putative class member actually
experienced manifestation of the . . . defect, so as to be able
to maintain a cause of action for breach of implied warranty of
merchantability, and then subsequently, individual inquiries into
the extent of damage sustained, whether the alleged defect was
the cause in fact or proximate cause of the damage sustained, and
finally whether each individual class member notified
[defendant].  The overwhelming requirement of individual
determinations is fatal to a showing of predominance of common
questions."); but see Dale v. DaimlerChrysler Corp., 204 S.W.3d
151, 176-77 (Mo. Ct. App. 2006) (certifying implied warranty
claim and stating, "the appellant claims that a class action
cannot be maintained because the core question of whether a
particular . . . vehicle is 'not merchantable' cannot be made on

72

a class-wide basis.  This, of course, goes to the issue of
whether the respondent can make a submissible case at trial . . .
as to this particular proof element.  That, however, is not an
issue in determining the propriety of a class action.").

The plaintiffs make no effort to distinguish the conflicting
authority, or, indeed, to even cite to a case supporting their
argument that their claim is capable of classwide proof.  Because
the burden to show predominance is the plaintiff's – and, indeed,
plaintiffs have forfeited the point by failing to adequately
brief it – the court declines to certify the Missouri plaintiff's
breach of implied warranty claim.

4.   <u>Unjust Enrichment</u>

In order to state a claim for unjust enrichment, plaintiffs
must establish: "'(1) that the defendant was enriched by the
receipt of a benefit; (2) that the enrichment was at the expense
of the plaintiff; and (3) that it would be unjust to allow the
defendant to retain the benefit.'"  <u>Garrett v. Cassity</u>, No.
4:09CV01252 ERW, 2011 WL 3235633, at *9 (E.D. Mo. July 28, 2011)
(quoting <u>Title Partners Agency, LLC v. Devisees of Last Will &</u>
<u>Testament of M. Sharon Dorsey</u>, 334 S.W.3d 584, 588 (Mo. Ct. App.
2011).

73

There is some authority supporting plaintiffs' proposition that unjust enrichment claims under Missouri law are capable of classwide proof.  See, e.g., Hale v. Wal-Mart Stores, Inc., 231 S.W.3d 215, 228 (Mo. Ct. App. 2007).  However, the court's view is in line with the analysis of the claim performed by the district court in In re BPA Liability Litig., 276 F.R.D. 336, 344 (W.D. Mo. 2011).

In that case, the plaintiffs argued that a determination as to whether defendants' retention of the benefits conferred by plaintiffs was unjust would not be an individualized inquiry, "as each member purchased or used the . . . products and Defendants' omissions were perpetrated in a standardized manner."  The district court disagreed, stating: "[a]s a general proposition, determining whether a defendant's retention of the benefit (i.e., the purchase price for the goods) is 'unjust' requires considering what a particular plaintiff received in exchange for bestowing that benefit. . . .  [I]f a person completely used a product without encountering ill-effects or other difficulties and can only declare after the fact that s/he would not have purchased the goods had the truth been known, such a person may not have 'unjustly' enriched the seller."  276 F.R.D. at 344. That analysis is not only consistent with the court's view, but also with the majority of courts to have considered this

particular issue.  <u>See</u> 1 McLaughlin on Class Actions § 5:60 (11th ed.) (discussed <u>supra</u>).


Thus, because unjust enrichment would require an individualized inquiry as to whether Dial unjustly retained a benefit at the expense of each plaintiff, plaintiffs' unjust enrichment claim is incapable of classwide proof.


**OHIO**

The Ohio plaintiffs seek certification for the following claims: Ohio Consumer Sales Practices Act, Ohio Deceptive Trade Practices Act, breach of express warranty, breach of implied warranty, and unjust enrichment.


1.  <u>Consumer Protection Claims</u>

(a)  <u>Ohio Consumer Sales Practices Act</u>

Courts have found Ohio Consumer Sales Practices Act claims capable of classwide proof.  <u>See</u> <u>In re ConAgra Foods, Inc.</u>, 90 F. Supp. 3d at 1011-1012 (analyzing and collecting authority, and stating: "A classwide inference of reliance is permitted where defendant's fraudulent or deceptive conduct is common to all consumers.").  "Omissions are actionable under the OCSPA if they 'concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service

75

involved.'"  In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d
801, 871 (S.D. Ohio 2012) (quoting Temple v. Fleetwood
Enterprises, Inc., 133 Fed. Appx. 254, 265 (6th Cir. 2005)).

The court having previously determined that there is
sufficient evidence in the record to support a finding that the
"alleged or misrepresented fact[s] at issue would likely have
been material to a consumer's decision to purchase" Dial
Complete, In re ConAgra Foods, Inc., 90 F. Supp. 3d at 1012, it
also finds that plaintiffs' Ohio Consumer Sales Practices Act
claim is capable of classwide proof.

(b)  Ohio Deceptive Trade Practices Act

While neither party briefed (or even raised) the issue, the
weight of authority in the Northern District of Ohio — where the
Ohio plaintiffs filed suit — supports the proposition that
consumers lack standing to file suits under the Ohio Deceptive
Trade Practices Act ("DTPA").[22]  See Leonard v. Abbott Labs.,
Inc., No. 10-CV-4676 ADS WDW, 2012 WL 764199, at *14 (E.D.N.Y.
Mar. 5, 2012) ("courts in the Northern District of Ohio have held

---

[22]     "[W]e are required to address the issue [of standing]
. . . even if the parties fail to raise the issue before us.  The
federal courts are under an independent obligation to examine
their own jurisdiction, and standing is perhaps the most
important of [the jurisdictional] doctrines."  United States v.
Hays, 515 U.S. 737, 742 (1995).

that consumers lack standing under the ODTPA [b]ecause the Lanham
Act denies standing to consumers, and Ohio courts apply the same
analysis applicable to the Lanham Act to ODTPA claims.")
(citations and quotations omitted); Phillips v. Philip Morris
Companies Inc., 290 F.R.D. 476, 482 (N.D. Ohio 2013) ("The vast
majority of federal courts and all lower state courts to address
the issue have concluded that relief under the DTPA is not
available to consumers.") (collecting cases); McKinney v. Bayer
Corp., 744 F. Supp. 2d 733, 749 (N.D. Ohio 2010) (noting split
between courts in the Northern District of Ohio and the Southern
District of Ohio on the question of who has standing to file suit
under the ODTPA).


     Because the case is pending in the Northern District of Ohio
and will return there for trial, the court declines to certify
the plaintiffs' DTPA claim at this time.  Instead, the court
orders the plaintiffs to show cause why their DTPA claim should
not be dismissed for lack of standing pursuant to the briefing
schedule set out below.


     2.   Breach of Express Warranty (Ohio Rev. Code Ann.
          § 1302.26)

     Ohio Rev. Code Ann. § 1302.26 states that "[e]xpress
warranties by the seller are created as follows: (1) Any
affirmation of fact or promise made by the seller to the buyer

77

which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise[;] (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description[;] (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."

Ohio courts have found express warranty claims capable of classwide proof. For example, in Godec v. Bayer Corp., No. 10-CV-224, 2011 WL 5513202, at *1 (N.D. Ohio Nov. 11, 2011), the plaintiff filed a purported class action, claiming a breach of express warranty for alleged misrepresentations Bayer made by promoting certain men's vitamins. The court noted that the vitamin packaging contained similar statements, which meant that the packaging could be proved on a classwide basis and, therefore, whether the packaging contained "'descriptions of the goods' or 'affirmations of fact or promise made by [Bayer] to the [class] which relate[] to the goods' can also be proved on a classwide basis." Id. at *3 (quoting Ohio Rev. Code Ann. § 1302.26). The court further found that whether "any of those promises, statements of fact or descriptions of the goods became part of the basis of the bargain" could also be proven on a

classwide basis because "when the representation is made during a
bargain, no particular reliance on such statements need be shown
in order to weave them into the fabric of the agreement."  Id. at
3-4 (internal citations omitted).  The court went on to state:

> Of [course], rather than negotiate with individual
> consumers face-to-face, Bayer usually "bargain[s]" from
> afar.  So it ships its products to retail outlets with
> its offer to consumers printed right on the package,
> e.g., "60 TABLETS," or "SUPPORTS PROSTATE HEALTH."
> Thus, when a consumer selects a Bayer product from the
> shelf, carries it to the cashier, and pays for it, the
> consumer carries with him the written terms of his
> agreement with Bayer.  Those terms become part of the
> basis of the bargain by virtue of their appearance []
> during a bargain, not because of any individual
> consumer's reliance.  Because this is true for every
> purchaser, and because the packaging was uniform across
> the class, whether the prostate-health message on the
> packaging gave rise to an express warranty is a common
> question that can be resolved with common evidence.

Id. at *5.  The court finds that reasoning persuasive, and
therefore concludes that the plaintiffs' express warranty claim
is capable of classwide proof.

    3.  Breach of Implied Warranty (Ohio Rev. Code Ann.
        § 1302.27)

    While Dial does not make the argument, "[u]nder Ohio law,
privity of contract is generally a prerequisite to a claim for
breach of the implied warranty of merchantability."  McKinney v.
Bayer Corp., 744 F. Supp. 2d at 756 (citing, inter alia, Curl v.
Volkswagon of Am., Inc., 871 N.E.2d 1141, 1147-48 (Ohio 2007) and

79

Flex Homes, Inc. v. Ritz-Craft Corp. of Mich., No. 07cv1005, 2008
WL 746669, at *8 (N.D. Ohio Mar. 18, 2008).); see also Cancino v.
Yamaha Motor Corp., U.S.A., No. 3:04CV274, 2010 WL 2607251, at
*10 (S.D. Ohio June 24, 2010) (denying motion for class
certification on breach of implied warranty claim because of
privity requirement, and stating: "a fundamental, individualized
issue will have to be resolved with regard to each member of the
class — was that member of the class in privity of contract with
[the defendant] — before he or she could recover for breach of
contract or breach of implied warranty of merchantability."); 
Savett v. Whirlpool Corp., No. 12 CV 310, 2012 WL 3780451, at *10
(N.D. Ohio Aug. 31, 2012) ("Ohio law requires privity in order to
sustain a breach of implied warranty claim.").[23]

There is some authority for the proposition that an
exception to the privity requirement exists where the purchaser
is the intended beneficiary of the manufacturer's agreement with
the retailer/distributor.  Bobb Forest Products, Inc. v. Morbark
Industries, Inc., 783 N.E.2d 560, 576 (Ohio Ct. App. (7th Dist.)
2002).  However, the court finds the pertinent analysis set forth
in McKinney v. Bayer Corp. persuasive and concludes that the
exception does not apply here.  744 F. Supp. 2d at 756-58

---

[23]    Plaintiffs do not assert that their Ohio implied
warranty claim sounds in anything but contract (e.g., tort).

(analyzing Ohio authority and declining to extend "the limited privity exception articulated in <u>Bobb Forest</u> beyond the facts of that case.").

Because each member of the Ohio class would need to establish vertical privity with Dial to prove an implied warranty claim, individual issues would predominate.  Certification of a class to pursue this claim is therefore inappropriate.

    4.  <u>Unjust Enrichment</u>

For a plaintiff to state a claim for unjust enrichment, Ohio courts seem to require privity between the parties, with a few limited exceptions that are inapplicable here.  <u>See, e.g.</u>, <u>Savett v. Whirlpool Corp.</u>, No. 12 CV 310, 2012 WL 3780451, at *7 (N.D. Ohio Aug. 31, 2012) (dismissing unjust enrichment claim where the plaintiff purchased the allegedly defective product from a retailer: "the Court finds that plaintiff fails to state a claim against defendant . . . for unjust enrichment because plaintiff does not allege that he conferred a direct benefit on this defendant.  Under Ohio law, indirect purchasers may not assert unjust enrichment claims against a defendant without establishing that the purchaser conferred a benefit on the defendant through an economic transaction."); <u>see also</u> <u>In re ConAgra Foods Inc.</u>, 908 F. Supp. 2d 1090, 1116 (C.D. Cal. 2012) (discussing

81

exceptions to privity requirement: "Ohio courts have found that plaintiffs conferred a benefit on defendants absent privity of contract in cases involving subcontractors, or sales to a customer whose identity defendant knew and for whom it specifically tailored the product.  This case falls into neither category.  Plaintiffs purchased [product] from retailers, and did not confer a direct economic benefit on ConAgra. . . . Consequently, plaintiffs' Ohio unjust enrichment claim must be dismissed.") (internal citations omitted); Johnson v. Microsoft Corp., 834 N.E.2d 791, 799 (Ohio 2005) ("The rule of law is that an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser.  The facts in this case demonstrate that no economic transaction occurred between Johnson and Microsoft, and, therefore, Johnson cannot establish that Microsoft retained any benefit to which it is not justly entitled."); Bower v. Int'l Bus. Machines, Inc., 495 F. Supp. 2d 837, 844 (S.D. Ohio 2007) ("Plaintiffs claim that IBM has benefitted from their purchase of the Deskstars, but nowhere have they alleged that they purchased the Deskstars directly from IBM. Absent such an allegation, their Complaint is fatally indefinite."); Hoffer v. Cooper Wiring Devices, Inc., No. 106CV763, 2007 WL 1725317, at *4 (N.D. Ohio June 13, 2007)

(dismissing unjust enrichment claim despite plaintiff's argument that he had purchased product and therefore conferred a pecuniary benefit through the "chain of sale:" "Ohio courts have not . . . held that purchase of products within a 'chain of sale' is sufficient to establish that a plaintiff has bestowed a benefit on a defendant.  Therefore, this Court finds Plaintiff's unjust enrichment claim insufficient due to a lack of a factual allegation of a benefit conferred on Defendant by Plaintiff.").

In light of Ohio law's requirement, the court concludes that the Ohio plaintiffs' unjust enrichment claim is incapable of classwide proof.

**WISCONSIN**

The Wisconsin plaintiffs seek certification for the following claims: Wisconsin Deceptive Trade Practices Act and unjust enrichment.

1.   <u>Wisconsin Stat. § 100.18, et seq.</u>

Dial argues that the plaintiffs' Wisconsin Deceptive Trade Practices Act ("DTPA") claim is incapable of classwide proof because it requires an individual showing of causation.  The weight of authority suggests that Dial is correct.

83

As for the Wis. Stat. 100.18 claim, the elements are
that the defendant made a representation to the public
with intent to induce an obligation; the representation
was untrue, deceptive, or misleading; and the
representation caused a pecuniary loss to the
plaintiff.  <u>Novell v. Migliaccio</u>, 309 Wis. 2d 132, 149
(2008).  Reasonable reliance is not an element of the
claim.  <u>See</u> <u>id</u>.  However, the reasonableness of a
plaintiff's actions in relying on the representation is
a defense to the claim.  <u>Id</u>.  Whether a plaintiff's
loss was caused by the misrepresentation depends on
whether the plaintiff would have acted in its absence,
and the misrepresentation had to have been a
significant factor contributing to the plaintiff's
decision.  Here, whether [defendant] made a
representation with the required intent and whether the
representation was untrue, deceptive, or misleading may
be common questions.  On the other hand, questions of
reasonable reliance by purchasers will vary.

<u>Doster Lighting, Inc. v. E-Conolight, LLC</u>, No. 12-C-0023, 2015

WL 3776491, at *18 (E.D. Wis. June 17, 2015); <u>see also</u> <u>Schmidt v.</u>

<u>Bassett Furniture Indus.</u>, No. 08-C-1035, 2011 WL 67255, at *6

(E.D. Wis. Jan. 10, 2011) (finding that resolution of plaintiff's

DTPA claim via class action would be impracticable and stating,

"The Wisconsin Supreme Court has held that reasonable reliance is

not an element of a claim under the DTPA but that the

reasonableness of a plaintiff's reliance may be relevant in

considering whether a representation materially induced the

plaintiff to sustain a pecuniary loss.  <u>Novell v. Migliaccio</u>,

749 N.W.2d 544, 554 (Wis. 2008) (noting that "the reasonableness

of a plaintiff's reliance may be relevant in considering whether

the representations materially induced the plaintiff's pecuniary

loss....')).  Here whether [defendant's] representation caused

each plaintiff a pecuniary loss will require an individualized analysis by the finder of fact."); Wyatt v. Philip Morris USA, Inc., No. 09-C-0597, 2013 WL 4046334, at *4, n.2 (E.D. Wis. Aug. 8, 2013) (denying motion for class certification and stating, "to prevail on a claim under the DTPA, a plaintiff must still prove that the defendant's deceptive advertising caused the plaintiff to suffer a pecuniary loss.  Here, it is the causation element that gives rise to the need to identify each class member's subjective beliefs: each class member will need to prove that he or she purchased Philip Morris's light cigarettes during the class period because he or she believed that the labels 'Lights' and 'Ultra Lights' implied that the cigarettes were safer to smoke than regular cigarettes.") (internal citations omitted).

    Plaintiffs do not cite any relevant legal authority to the contrary.[24]  Accordingly, the court finds that the Wisconsin plaintiff's DTPA claim is incapable of classwide proof.

---

    [24]    Indeed, the only case cited by the plaintiffs that actually involves a DTPA claim, K&S Tool & Die Corp. v. Perfection Machinery Sales, Inc., 732 N.W.2d 792, 802 (Wis. 2007), did not involve a class action.  And while the court in K&S Tool did state that "plaintiff does not have the burden of proving reasonable reliance" to establish a DTPA claim, the court went on to state: "the reasonableness of a plaintiff's reliance may be relevant in considering whether the representation materially induced the plaintiff's pecuniary loss."  Id.

2.  <u>Unjust Enrichment</u>

"To establish a claim for unjust enrichment, the plaintiff must prove three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." <u>Hegel v. Brunswick Corp.</u>, No. 09-C-882, 2010 WL 2900379, at *5 (E.D. Wis. July 20, 2010) (citing <u>Buckett v. Jante</u>, 767 N.W.2d 376 (Wis. 2009)).

Wisconsin courts have held that unjust enrichment claims are incapable of classwide proof because (1) "each Plaintiff would have to demonstrate how [defendant] benefitted from his or her own actions"; and (2) the claim "requires an inquiry into the equities involved with each class member." <u>Id.</u> (concluding that individual inquiries would make impracticable any attempt to adjudicate the unjust enrichment claim through a class action); <u>see also</u> <u>Wyatt v. Philip Morris USA, Inc.</u>, 2013 WL 4046334, at *6 ("The obstacle to class treatment of this claim relates to the third element — proving that every sale of light cigarettes during the class period was made under such circumstances that it would be inequitable for [defendant] to retain the benefit (i.e., the profits from the sale).  Plaintiff contends that he can prove

86

this by showing that the cigarettes were less valuable than they would have been had they been necessarily safer to smoke than regular cigarettes.  But . . . , the fact that a class member would have paid more for cigarettes that were necessarily safer to smoke than regular cigarettes is irrelevant unless it is first proved that the class member thought he was purchasing cigarettes that were necessarily safer to smoke than regular cigarettes.  If he did not think that he was purchasing cigarettes with that feature, then his receiving cigarettes that did not have that feature would not have resulted in unjust enrichment.  Thus, plaintiff's unjust enrichment claim will require individualized inquiries into each class member's beliefs at the time of each purchase and therefore is not maintainable as a class action.")

The plaintiffs fail to provide any authority to the contrary.  Accordingly, the court finds the Wisconsin unjust enrichment claim is incapable of classwide proof.

### B.   Rule 23(b)(3) - Common Question

The court having concluded that certain of the plaintiffs' claims are capable of classwide proof, the court now must determine whether common questions will predominate over individual issues with respect to those claims.

Dial makes one argument that the court has not already
addressed.  Dial argues that plaintiffs offer "no methodology at
all to prove injury" on a class-wide basis.  (Def.'s Br. in Opp.
to Class Certification (document no. 86) at p. 27.)  Dial
contends that to prove injury, class members will need to prove
that they paid a premium for each purchase of Dial Complete,
which would require a determination of (1) the amount each
individual class member paid for each purchase of Dial Complete;
and (2) how that amount compares to the price that class member
would have paid for an alternative product.  In support of its
argument, Dial points out that some class members may have paid
more for an alternative product had they not bought Dial
Complete, and so were not injured.

Dial's argument is off the mark in that it conflates injury
with damages.  If Dial Complete is not, in fact, more effective
than other liquid hand soaps, than the "common actual injury
consisted of the payment of the price" for a product that did not
provide the benefits it promised, and "the associated receipt of
an inferior product different from that which the consumers
purchased." Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 569; see
also Nelson v. Mead Johnson Nutrition Co., 270 F.R.D. 689, 692
n.2 (S.D. Fla. 2010) ("Upon closer inspection, however, a
deceptive practice can cause a consumer damages even if the

consumer does not rely on the deceptive practice when purchasing

a particular product.  Ostensibly, a deceptive practice allows a

manufacturer or vendor to charge a premium for a product that the

manufacturer would not be able to command absent the deceptive

practice.  Thus, even if an individual consumer does not rely on

a deceptive practice when deciding to purchase that product, the

consumer will have paid more for the product than she otherwise

would have.  Consequently, the consumer suffers damages.");

Belfiore v. Procter & Gamble Co., No. 14-CV-1142, 2015 WL

5781541, at *30 (E.D.N.Y. Oct. 5, 2015) ("the injury is the price

premium on every [falsely advertised] product sold.").  But, to

the extent that some class members were satisfied that any

premium that they paid for Dial Complete "was worthwhile," those

class members "can opt out or decline to file for damages awarded

to the class."  Belfiore, 2015 WL 5781541 at *30.


As previously discussed, Rule 23(b)(3) does not require that

all issues be common.  It only requires that common issues

predominate.  See Smilow, 323 F.3d at 39 (1st Cir. 2003); see

also Garner v. Healy, 184 F.R.D. 598, 602-03 (N.D. Ill. 1999)

("The critical question here is whether Defendants have

misrepresented their products to consumers.  Unlike a mass tort

case or a defective pharmaceutical device case, there are no

'subsidiary concepts' such as duty of care, foreseeability or

89

medical/scientific causation lurking in the background here.
This is a fairly straight-forward consumer fraud case involving
what has been alleged to be standardized conduct by Defendants.")
(internal citation omitted).  The state law claims at issue here
raise common questions as to whether Dial materially
misrepresented Dial Complete's efficacy and misled reasonable
consumers.  And, at bottom, the gist of the plaintiffs' complaint
is that purported class members paid for "better than basic
soap," but received "basic soap."  Whether, in fact, Dial
Complete is "better than basic soap" is an issue that relates to
and will be resolved with respect to all plaintiffs.  Indeed,
Dial seems to concede the point in its briefing, stating: "The
core fiction at the heart of plaintiffs' case is the assertion
that Dial Complete is no more effective than regular soap at
killing germs."  (Def.'s Br. in Opp. to Class Certification
(document no. 86) at p. 1.)

     The court therefore concludes that the plaintiffs have
sufficiently established the predominance of common issues of
liability.


     **C.   Statute of Limitation Defenses**

     Dial argues that its statute of limitations defenses against
putative class members present individualized questions and weigh

against certification, pointing out: "with a putative class

period of 12 years, many claims are certain to be barred by the

statute of limitations."  Dial then directs the court to an

appendix where it helpfully sets out the applicable statutes of

limitation for each of the plaintiffs' claims.  The plaintiffs

respond perfunctorily that the application of any limitations

period should be tolled, or, alternatively, that the class period

should be limited to consumers who purchased Dial Complete within

any particular statutory period.


On this topic, the First Circuit has stated:

Although a necessity for individualized statute-
of-limitations determinations invariably weighs against
class certification under Rule 23(b)(3), we reject any
per se rule that treats the presence of such issues as
an automatic disqualifier.  In other words, the mere
fact that such concerns may arise and may affect
different class members differently does not compel a
finding that individual issues predominate over common
ones.  As long as a sufficient constellation of common
issues binds class members together, variations in the
sources and application of statutes of limitations will
not automatically foreclose class certification under
Rule 23(b)(3).

Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st

Cir. 2000).  In light of that precedent, the court rejects Dial's

argument that "variations in the sources and application of

statutes of limitations," id., defeats predominance.  Since

neither party fully, or even adequately, briefed the equitable

tolling issue, the court declines to consider the matter at this

juncture.  The court will initially limit the class definition

for each claim to consumers who purchased Dial Complete within

the relevant statutory period, but without prejudice to

plaintiffs revisiting the issue should they determine that a good

faith, well-grounded, class-wide application of equitable tolling

can be asserted.


    **D.**    **Damages**

    Even if there are many common issues of liability, Dial

urges this court to deny class certification because individual

questions of damages would require mini-trials of each potential

class member's claim to determine how much each person paid for

Dial Complete, what soap they would have purchased if they had

not purchased Dial Complete, what the effective hand-cleaning

ability of Dial Complete was worth to each of them, and the like.

Dial further contends that the methods for calculating damages on

a classwide basis proposed by plaintiffs' experts are not

sufficiently tied to their theory of the case or insufficiently

cohesive and rigorous at this stage to satisfy <u>Comcast Corp. v.</u>

<u>Behrend</u>, 133 S. Ct. 1426 (2013).


    As an initial matter, the court rejects the notion that

because individual damages calculations might be necessary, the

class is not properly certifiable.  Indeed, it is "well-

established that the individuation of damages in consumer class
actions is rarely determinative under Rule 23(b)(3).  Where
common questions predominate regarding liability, then courts
generally find the predominance requirement to be satisfied even
if individual damages issues remain."  In re Nexium Antitrust
Litig., 777 F.3d 9, 21 (ellipsis omitted).  The principle remains
valid even after Comcast.  As the First Circuit recently stated:
"the Supreme Court in Amgen and the circuits in other cases have
made clear that the need for some individualized determinations
at the liability and damages stage does not defeat class
certification.  Amgen [, 134 S. Ct. at 1196].  Rather, the
question is whether there is 'reason to think that individualized
questions will overwhelm common ones and render class
certification inappropriate.'"  Id. at 21 (quoting Halliburton,
134 S. Ct. at 2412) (alterations omitted) (emphasis in 777 F.3d
9).  Indeed, "[e]ven in cases where the 'issue of injury-in-fact,
not just damages calculation[,] presents individual questions, it
does not necessarily follow that they predominate over common
ones and that class action treatment is therefore unwarranted.'"
Id. (quoting Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards &
Sons, Inc., 502 F.3d 91, 108 (2d Cir. 2007) (alterations omitted)
(emphasis added in 777 F.3d 9).

93

As Judge Posner observed with respect to the Supreme Court's decision in <u>Comcast</u>:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require every member of the class have identical damages.  If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification.  Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.

<u>Butler v. Sears, Roebuck & Co.</u>, 727 F.3d 796, 801 (7th Cir. 2013) <u>cert</u>. <u>denied</u>, 134 S. Ct. 1277 (2014).

Instead, our court of appeals instructs that <u>Comcast</u> should be understood to require that a plaintiff's "theory of liability is limited to the injury caused by the defendants." <u>In re Nexium</u>, 777 3d at 18.  "In other words, the defendants cannot be held liable for damages beyond the injury they caused." <u>Id</u>.  To satisfy <u>Comcast</u>, plaintiffs must establish that their theory of damages is tied to their theory of liability, and that their damages theory is subject to calculation by a "'common methodology' applicable to the class as a whole." <u>In re Nexium (Esomeprazole) Antitrust Litig.</u>, 297 F.R.D. 168, 182 (D. Mass.

2013), aff'd sub nom.  In re Nexium Antitrust Litig., 777 F.3d 9
(1st Cir. 2015) (quoting Comcast 133 S. Ct. at 1430).

Plaintiffs' experts have proposed four methodologies for
computing damages on a class-wide basis: (1) disgorgement of the
total purchase price paid by consumers; (2) disgorgement of the
total wholesale price charged by Dial; (3) disgorgement of profit
contribution accruing to Dial by its sale of Dial Complete to
consumers; and (4) disgorgement of any premium paid by consumers.

Dial is correct in pointing out that plaintiffs' experts'
theories based on disgorgement of either the full purchase price
of Dial Complete, the full wholesale price, or the full profit
margin realized by Dial do not satisfy Comcast.  Those theories
ignore the reality that plaintiffs realized value from Dial
Complete in that it was unarguably effective as soap in cleaning
their hands.  That leaves plaintiffs' damages theory based on
disgorgement of the premium paid by consumers, if any, for
properties promised in the alleged misrepresentations but found
wanting in the soap.

Dial contends, through its own expert, that plaintiffs'
experts' damages methodology purporting to calculate the price
premium associated with each unit of Dial Complete based on the

95

value of the claimed germicidal properties is flawed for several

reasons.  First, Dial submits that its expert and the evidence

establish that there was no actual premium paid for the

challenged properties.[25]  Second, similar to its reliance

arguments, Dial asserts that there would be no way to identify a

competing product, or set of competing products, against which to

measure the price of Dial Complete at any given time, especially

when sales and promotions impact consumer prices, and a wide

variety of considerations impact consumer preference.  Third,

with respect to plaintiffs' experts' "conjoint analysis" model,

---

[25]     In support of its argument that there was no premium,
and that Dial Complete would have been priced the same with or
without the claimed germicidal properties, Dial points to its
expert's conclusion that Dial Complete did not command a premium
over competing foaming soaps without similar germicidal claims.
(See Def.'s Surreply in Opp. to Class Certification (document no.
175) at p. 14.)  But on this point, the court finds the report
prepared by plaintiffs' experts, Rosen and Burke, persuasive:

     The term 'premium' is better described as the
     amount of money consumers pay to acquire a certain
     attribute of a product.  Assuming the allegations in
     this case to be true, [class members] have paid to
     purchase antibacterial attributes of Dial Complete they
     did not receive, and they have thus been damaged as a
     result thereof.  This is true whether the price of the
     product is higher, lower, or the same as other products
     without the attribute.  The costs of including the
     anti-bacterial agent becomes embodied in the price of
     the product in the same way all other costs such as
     packaging, advertising[,] etc. and are paid for by all
     class members regardless of the reasons they may have
     purchased the product.

(See Burke and Rosen Rebuttal Report (document no. 162-4) at
¶ 36.)

Dial argues that plaintiffs' experts fail "to present an actual testable model even for the purpose of evaluation, and instead simply describe[] the theory behind the methodology." (Def.'s Surreply in Opp. to Class Certification (document no. 175) at p. 16.) Dial further argues that plaintiffs' proposed conjoint model would, at most, be effective to approximate consumer preferences for a particular product attribute through consumer surveys but would not accurately calculate the price premium, if any, a consumer actually paid for a given characteristic.

Plaintiffs' experts, Dr. John Burke and Dr. Harvey Rosen, both of whom hold doctoral degrees and have over eighty combined years of experience in calculating class damages, submitted reports attesting to the existence of data available from Dial and from data collection services in the market sufficient to calculate a price premium attributable to Dial Complete's claims that it "[k]ills 99.99% of germs" and the other similar challenged claims. As Dial points out, and plaintiffs acknowledge, these calculations will certainly consist of averages and best-estimates. But that fact alone does not defeat class certification. "[It] is . . . clear in the First Circuit that '[t]he use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself.'" In re Nexium (Esomeprazole)

97

Antitrust Litig., 297 F.R.D. at 182 (quoting In re Pharm. Indus.
Average Wholesale Price Litig., 582 F.3d 156, 197 (1st Cir. 2009)
(citing 3 Herbert B. Newberg & Alba Conte, Newberg on Class
Actions § 10.5, at 483-86 (4th ed. 2002) ("Aggregate computation
of class monetary relief is lawful and proper. Courts have not
required absolute precision as to damages...."))).

But, plaintiffs have provided insufficient detail regarding
their proposed methodologies for calculating classwide damages.
As Dial points out, plaintiffs' experts' damages methodologies
are "bare bones," (Def.'s Br. in Opp. to Class Certification
(document no. 86) at p. 25) and set forth little detail
concerning the "significant conceptual, implementation, or data
issues that would be encountered" if their approach were adopted.
Wiener v. Snapple Beverage Corp., No. 07-civ-8742(DLC), 2010 WL
3119452, at *7 (S.D.N.Y. Aug. 5, 2010); see also Randolph v. J.M.
Smucker Co., 303 F.R.D. 679, 698 (S.D. Fla. 2014) (finding
proposed methodology inadequate where "[o]ther than the bald,
unsupported assertion that this method will work, Plaintiff
presents no hard-and-fast evidence that the premium is capable of
measurement.  Plaintiff merely asserts that other courts have
found such models to be feasible mechanisms by which damages
could be measured and that this court should do the same, yet, as
mentioned, no evidence on the actual model to be applied has been

submitted, nor has Plaintiff demonstrated that the model will isolate premium received by the inclusion of the alleged misrepresentation.")

   In their initial report, Rosen and Burke propose to calculate the premium paid by consumers by comparing Dial Complete to alternative competing substitute products that do not contain the challenged claims.  In their rebuttal report, however, they seemingly move away from their earlier reliance on such a model.  (Compare Burke and Rosen Expert Report (document no. 57, Exh. 21) at ¶ 9 (indicating that calculating premium paid by consumers would require data "for all substitute products (cross elasticity of demand) to determine an average premium charged") with Burke and Rosen Rebuttal Report (document no. 162-4) at pp. 13, 15 ("Another advantage of conjoint analysis is that it obviates the need to choose a benchmark product because there is no need to calculate a price differential between Dial Complete and any such benchmark.")

   To the extent plaintiffs are still relying on that methodology, their efforts to identify a workable model fall short.  Burke and Rosen have not made any effort to identify which products might serve as effective comparators to Dial Complete, or even to determine which criteria should be used to

99

determine whether a particular product would serve as an
effective comparator.  (<u>See</u> Rosen Dep. (document no. 86-7) at
121:3-122:24.)  Indeed, Rosen's own testimony seems to suggest
that he has yet to ascertain exactly how he will identify an
appropriate comparator or specifically calculate a premium
associated with the claimed attributes against a designated
comparator.  (<u>See</u> Rosen Dep. (document no. 86-7) at 124:15-127:8;
154:7-16.)  Because the methodology proposed by Rosen and Burke
does not attempt to isolate the premium due only to the
challenged attributes, it is not consistent with plaintiffs'
theory of liability.  <u>See Brazil v. Dole Packaged Foods, LLC</u>,
No. 12-CV-01831-LHK, 2014 WL 5794873, at *8 (N.D. Cal. Nov. 6,
2014) (finding that expert's proposed regression model did not
sufficiently isolate the price impact of defendant's alleged
misrepresentations, and "therefore fails under <u>Comcast</u> to
adequately tie damages to Dole's supposed misconduct.").[26]

---

[26]    Burke and Rosen did perform a preliminary analysis
comparing the average price of Dial Complete with Dial Gold, a
Dial product marketed without the challenged claims.  But, as
Dial's expert notes, Burke and Rosen only "calculated the price
difference between Dial Complete and Dial Pump, not an alleged
price premium attributable to the Challenged Claims."  (Ugone
Report at p. 26.)  Rosen himself testified that such an analysis
would not ultimately suffice for calculating damages:

   Q:   Do I understand correctly that you propose to
        determine damages by calculating the difference
        between two figures, first of all the average
        retail price of Dial Complete.  And second of all,
        the average retail price of a range of alternative
        competing substitute products?

As for their proposed conjoint analysis methodology, Rosen and Burke fail to provide an actual model for evaluation, or any details regarding exactly how "the estimated attribute value of the challenged claims" will be established.  Instead, in their rebuttal report, Rosen and Burke discuss how the conjoint analysis works generally, stating: "Data is collected on consumer preferences by the use of questionnaires and panel surveys, like those used by Dial.  After the statistical data is collected[,] part-worth values are calculated using regression analysis from the surveys and are used to value dollar different attributes of the product, such as the challenged claims."  (Burke and Rosen Rebuttal Report (document no. 162-4) at ¶ 41.)  Rosen and Burke provide minimal detail, however, about what data they will rely upon, where the data will come from, or how they will isolate the value attributable to the allegedly false efficacy claims.[27]

---

A:   Well, first of all, that might not be the only way
     or the way at all because we have four different
     methodologies which may be employed; however,
     you're referring to the third methodology on the
     premium analysis, and it would not be simply
     taking as we did in Exhibit A [to Rosen's Expert
     Report] where we looked at your marketing report.
     That was just so I could see whether there was any
     kind of consistent differential or not.  It would
     have to be much more sophisticated than that.

(Rosen Dep. 130:2-15.)

[27]   The excerpts of Rosen's deposition testimony provided to the court fail to fill in the blanks:

Q:   You say you were asked to provide methodology.

Moreover, as Dial's expert points out, Rosen and Burke do not provide any specifics regarding the regression analysis they intend to use, or how the estimated attribute value of the challenged claims will be applied to the price paid by consumers in the market.  (See Ugone Surreply (document no. 175-1) at ¶¶ 6-10, 12.)  Greater detail is essential to the valid assessment of the feasibility of plaintiffs' proposed methodology.[28]

To be clear, at the class certification stage, it is not necessary that class damages be calculated to a mathematical certainty.  Even in Comcast, the Court held that "[c]alculations need not be exact," but rather "at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case

_____

                But my question actually was whether you have
                developed a methodology.
        A:      Well, there are the methodologies.
        Q:      Right, but I take it—
        A:      Measure purchase price, measure, you know, the
                wholesale revenues.
        Q:      Right, but you haven't developed any method for
                applying those general tools to the specific
                question of whether any price premium for Dial
                Complete is attributable to the challenged class?
        A:      Well, as we said in here, it may very well be some
                form of regression analysis or something similar
                to that.
        Q:      Right, but you haven't developed one?
        A:      No.

(Rosen Dep. (document no. 86-7) at 182:23-183:14.)

        [28]   Rosen repeatedly testified that he did not have
sufficient data when performing his analyses.  (See, e.g., Rosen
Dep. (document no. 86-7) at 132:10-19; 133:4-6.)

must be consistent with its liability case . . . .'" <u>Comcast</u>,
133 S. Ct. at 1433 (quoting ABA Section of Antitrust Law, Proving
Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed.
2010)).

Plaintiffs simply have not provided the court with
sufficient details to permit a full assessment of whether damages
can be feasibly calculated on a classwide basis.  That is
certainly not to say that damages cannot be calculated on a
classwide basis here.  Indeed, courts have held that the "use of
conjoint analysis in conjunction with a proposed hedonic
regression" that accounts for supply and demand factors can
satisfy <u>Comcast</u>.  <u>See</u> <u>ConAgra</u>, 90 F. Supp. 3d 919. 1027-1032; <u>see</u>
<u>also</u> <u>Guido v. L'Oreal, USA, Inc.</u>, No. 2:11-cv-01067-CAS, 2014 WL
6603730, at *13 (C.D. Cal. Jul. 24, 2014) ("Both models calculate
the premium classwide — every class member paid the same extra
charge for each bottle of Serum.  Of course, plaintiffs' premium
calculation may be wrong.  Or, as L'Oreal suggests, a properly
performed RCDE and Conjoint analysis may reveal that there was in
fact no extra charge associated with the removal of the
flammability warning.  But under either scenario, plaintiffs'
claims would fail across the board, not plaintiff-by-plaintiff.")
As the court of appeals has noted, "[a]t the class certification
stage, however, the district court must still ensure that the

103

plaintiffs' presentation of their case will be through means
amenable to the class action mechanism.  We are looking here not
for hard factual proof, but for a more thorough explanation of
how the pivotal evidence behind plaintiff's theory can be
established.  If there is no realistic means of proof, many
resources will be wasted setting up a trial that plaintiffs
cannot win."  In re New Motor Vehicles Canadian Exp. Antitrust
Litig., 522 F.3d 6, 29 (1st Cir. 2008).

     In sum, plaintiffs have satisfied Rule 23(a)'s requirements,
and Rule 23(b)(3)'s superiority requirements.  However,
plaintiffs have not shown that common questions predominate over
individualized questions with respect to damages calculation, and
therefore certification of the putative classes under Rule
23(b)(3) is not appropriate.

                        **Conclusion**

     For the foregoing reasons and as set forth herein, the court
rules on plaintiffs' motion for class certification (document no.
57) as follows:

     1.   Plaintiffs' motion for certification of a
          Wisconsin class is denied;

104

2.   Plaintiffs' motion for certification of an
     Arkansas class with respect to the express
     warranty and unjust enrichment claims is denied;

3.   Plaintiffs' motion for certification of a
     California class with respect to the implied
     warranty and unjust enrichment claims is denied;

4.   Plaintiffs' motion for certification of a Florida
     class with respect to the Florida Misleading
     Advertising Statute claim, and claims for express
     warranty, implied warranty and unjust enrichment
     is denied;

5.   Plaintiffs' motion for certification of an
     Illinois class with respect to the express
     warranty and unjust enrichment claims is denied;

6.   Plaintiffs' motion for certification of a
     Louisiana class with respect to the express
     warranty and unjust enrichment claims is denied;

7.   Plaintiffs' motion for certification of a Missouri
     class with respect to the express warranty,
     implied warranty and unjust enrichment claims is
     denied;

8.   Plaintiffs' motion for certification of an Ohio
     class with respect to the implied warranty and
     unjust enrichment claims is denied; and

9.   Plaintiffs' motion for certification of a class
     with respect to the remaining claims is denied,
     albeit without prejudice.  While plaintiffs have
     satisfied Rule 23(a)'s requirements for those
     claims, they have not yet demonstrated that
     damages can be calculated on a classwide basis,
     and therefore have not met Rule 23(b)(3)'s
     requirements.

If the plaintiffs believe, in good faith, that they can
adequately address the deficiencies described in this order, they
may, on or before **February 12, 2016**: (1) move to substitute a
plaintiff who can adequately represent the putative Louisiana
class; and (2) file an amended motion for class certification,
specifically addressing those deficiencies discussed in this
order related to plaintiffs' Ohio Deceptive Trade Practices Act
claim, and their methodology for computing damages on a class-
wide basis.

     **SO ORDERED.**

                                   _____
                                   Steven J. McAuliffe
                                   United States District Judge

December 8, 2015

cc:  Tamar G. Arminak, Esq.
     Richard J. Arsenault, Esq.
     Eugene F. Assaf, Esq.

106

Daniel E. Becnel, Jr., Esq.
Robert M. Becnel, Esq.
Karl A. Bekeny, Esq.
Paul E. Benson, Esq.
Amy Bloom, Esq.
Jordan L. Chaikin, Esq.
Elizabeth M. Chiarello, Esq.
Salvadore Christina, Jr., Esq.
John R. Climaco, Esq.
Randall S. Crompton, Esq.
Stuart A. Davidson, Esq.
Mark J. Dearman, Esq.
Douglas P. Dehler, Esq.
Christopher M. Ellis, Esq.
John E. Galvin, III, Esq.
Jonathan H. Garside, Esq.
Mark J. Geragos, Esq.
Jayne A. Goldstein, Esq.
Eric D. Holland, Esq.
D. Scott Kalish, Esq.
Lucy J. Karl, Esq.
Shelley Kaufman, Esq.
Sean T. Keith, Esq.
Adam J. Levitt, Esq.
Patricia E. Lowry, Esq.
Thomas D. Mauriello, Esq.
Robert H. Miller, Esq.
Matthew B. Moreland, Esq.
Cullin A. O'Brien, Esq.
Edward K. O'Brien, Esq.
John A. Peca, Jr., Esq.
Chad W. Pekron, Esq.
Frank E. Piscitelli, Jr., Esq.
David C. Rash, Esq.
Richard D. Raskin, Esq.
Allison W. Reimann, Esq.
Fred R. Rosenthal, Esq.
Charles E. Schaffer, Esq.
Miriam L. Schimmel, Esq.
Gerard B. Schneller, Esq.
Eugene A. Schoon, Esq.
James C. Shah, Esq.
Joseph J. Siprut, Esq.
Andrew J. Sokolowski, Esq.
Steven J. Stolze, Esq.
John C. Theisen, Esq.
Robert C. Tucker, Esq.
John-Mark Turner, Esq.
Edwin John U, Esq.
Reginald Von Terrell, Esq.
Patrick G. Warner, Esq.
Robert R. Younger, Esq.